REUBEN M. GARNETT ET AL., HEIRS OF REUBEN GARNETT, DECEASED, APPELLANTS V. HENRY JENKINS ET AL.

76

The case was submitted to the court on an argument by Mr Allan, for the appellants.

Mr Justice M'LEAN delivered the opinion of the Court.

This suit in chancery comes before this court, by an appeal from the circuit court of the United States, for the district of Kentucky.

By the bill, and answers, and the agreement of the parties, the validity of the following entry is the only point presented

for the decision of the court. "May 10th 1780, Reuben Garnett enters one thousand one hundred and sixty-four and two-thirds acres, upon a treasury warrant, on the seventh big fork, about thirty miles below Bryant's station, that comes in on the north side of North Elkhorn, near the mouth of said creek, and running up on both sides thereof for quantity."

To constitute a valid entry, the objects called for must be known to the public at the time it was made, and the calls must be so certain as to enable the holder of a warrant to locate the vacant land adjoining. It is not necessary that all the objects called for shall be known to the public, but some one or more leading calls must be thus known, so that an inquirer, with reasonable diligence, may find the land covered by the warrant.

Respecting the above entry, a great number of depositions were taken, and, with the view of tracing accurately the calls of the entry, several surveys were executed.

The principal objections to the validity of the entry are, that the call for the seventh fork does not designate the creek, on which the complainants allege the land is situated, and that the beginning corner is not only uncertain, but no marked lines or corners of the survey have been found. The proof in the case is as follows.

Patrick Jordan states, that in 1775 he passed up Elkhorn, near where Bryant's station was afterwards built, but was never at the station until August 1780, when he acted as a guard, and he recollects of hearing James Forbes, or some one of the men belonging to the station, ask certain hunters if they had been as low down as the seventh big fork, or the seventh fork. The witness then inquired which of the forks was called the seventh fork, and was told by the hunters that it was the creek that was also called Lecompt's run. That in the year 1779 he knew the creek by that name, having in the year 1775 assisted Charles Lecompt in building his cabin near the creek, but never heard it called by that name until 1779. In the year 1780 the witness relates that Bryant's station was a place of general notoriety, and he presumes it is twenty-five or thirty miles above Lecompt's run. This run falls into Elkhorn on the north side, and it was generally called Lecompt's run as early as May 1780.

John Ficklin states, that he has been acquainted with Bryant's station ever since the year 1781, and was well acquainted with the waters of North Elkhorn as low down as Lecompt's run, and he frequently heard this run called the seventh big fork, though not earlier, that he recollects, than 1782. Both Bryant's station and North Elkhorn were places of great notoriety at that time. Lecompt's run falls into Elkhorn on the north side ; and the witness thinks the distance from the station to the run was computed at about thirty miles. Witness states, that seventh big fork was generally known by that name at Bryant's station.

Jacob Stucker says, that since the year 1780, he has been acquainted with the waters of Elkhorn, that Bryant's station stands near the creek, which was a stream of notoriety when he first knew it. He frequently heard Lecompt's run called the seventh big fork by hunters, as early as the year 1780 and 1781 ; but until the year 1782 he never saw the creek. It is the seventh big fork, on the north side of Elkhorn, below Bryant's station ; the first one being David's fork; the second, Little North fork; the third, Cherry's run; the fourth, Miller's run, the fifth, Dry run ; the sixth, M'Connell's run ; and the seventh, Lecompt's run. There is a small branch between David's fork, and the Little North fork, called Opossum run, and another between Miller's run and Dry run, called Lane's run ; and another between Dry run and M'Connell's run, called M'Cracken's run ; but these branches are small in comparison with the seven branches first named, and have the appearance of spring branches. There are also two other branches, called Mile branch and the Blue Spring branch, but they are small, and not more than a mile and a half long. The witness states, that had he been called, as early as the year 1780, to direct Garnett's survey, he should have been led to the mouth of Lecompt's run, which is about thirty miles below Bryant's station.

Robert Hortness, a witness, states, that in the year 1784, he became acquainted with North Elkhorn, which was then a creek of notoriety, and that, at that time, David's fork, Little North fork, Cherry's run, Miller's run. Dry run, M'Connell's run and Lecompt's run, were the seven largest forks falling into Elkhorn on the north side, below Bryant's station. At that time the runs, called Opossum run, Lane's run, and

M'Cracken's run, were too small to be considered large forks, not being larger, if so large, as the branches or forks of some of the seven forks. The witness thinks the calls of Garnett's entry were sufficient to lead an inquirer to Lecompt's run.

Hugh Shannon states, that Lecompt's run has been known and called by that name by hunters and others, since 1776. He was well acquainted with Lecompt's improvement made on this creek in 1775, and ever since the year 1776 it has been known as Lecompt's improvement. Never heard this run called the seventh big fork. Witness became acquainted with Bryant's station in the winter of 1779.

Ash Emerson states, that he is well acquainted with North Elkhorn, and that if he had been called on in the year 1780, to name the seven big forks or big runs, falling into North Elkhorn, on the north side, below Bryant's station, he should have named the following : David's fork, Little North fork, Cherry's run, Miller's run, Lane's run, and M'Cracken's run, which would be the seventh. In 1776 the witness knew M'Connell's run by that name, and also the Dry run ; he and his company gave Miller's run and Cherry's run their names ; some of the creeks were called by different names. Never heard Lecompt's run called the seventh big fork ; M'Cracken's run and Lane's run were not so large as the other forks, but Lane's run heads as far up in the ridges as any other one. Lewis Valandingham since 1782 has been well acquainted with the water courses above named, and he corroborates the statement of Emerson.

John Miller states, that in the spring of 1776, he became acquainted with Lecompt's run ; and ever since it has been known by that name. He does not count himself a judge of what would be big forks or runs, but he would call them David's fork, Little North fork, Cherry's run, Miller's run, M'Cracken's, M'Connell's and Lecompt's.

John Williams says, that he was acquainted with North Elkhorn in the year 1775, and if, on the 10th of May 1780, he had been required to point out the seventh big fork, below Bryant's station, he could not have done it, as he never knew a creek called by that name. Since the year 1776, Lecompt's run has been generally called and known by that name.

James M'Connell became acquainted with Lecompt's run in

1776, and has never heard it called by any other name : until of late years it has been called by some the seventh run.

John Smith in the year 1773 became acquainted with the waters of North Elkhorn, and early in the spring of 1775 knew Lecompt's run ; and he never knew it called by any other name, until lately he was informed, that certain persons were about calling it the seventh big fork or branch. Had the witness been called on to designate the seventh big fork falling into North Elkhorn on the north side, he should have named M'Cracken's run. He thinks that Lecompt's run is one or two and twenty miles below Bryant's station. In 1775 Lane's run and M'Cracken's run had their names given to them. These runs, at their mouths, are some smaller than the others, but they branch out into a body of very good land as large as the others, though the witness does not think they are as long. On the north side of Elkhorn, the route usually travelled, the witness supposes the distance from Bryant's station to Lecompt's run, is about thirty miles.

Anthony Lindsay says, that in the year 1791, he became acquainted with the general boundary of Garnett's claim of land, on Lecompt's run ; that in the year 1793, John Perkins made a settlement on a part of the claim, under James Ferguson, who had purchased Lecompt's title. Witness has a perfect recollection of hearing the early settlers speak of Lane's run as one of the principal branches falling into Elkhorn below Bryant's station.

Henry Herdon also states, that he resided at Bryant's station in 1781, and became well acquainted with the principal branches of Elkhorn, and that Lane's run was always considered as one of the principal branches or forks. James Bell says, that as early as 1789, Lane's run and the others, were called large branches. And James Jones states, that M'Cracken's run and Lane's run were both called large runs in 1789.

James Connelly states, that in 1794 he purchased from colonel Johnson the land on which he now lives, which is about a quarter of a mile below M'Connell's run ; and the witness always considered Lane's run a big branch. He was twice called on by the agent of Garnett, and they searched all around the mouth of Lecompt's run to find Garnett's beginning corner, and examined every tree and stump, but could find no marks,

until they went up the run to a small bottom near where some cedars stood; there they found an ash marked, but he does not recollect what the marks were.

William Mosby states, that he has lived at the mouth of Lane's run for forty years; that Lane's run is among the largest falling into North Elkhorn on the north side, that its source is in the dividing ridge. Its mouth is circumscribed by a mill-dam across Elkhorn just below, which has obstructed the channel at the mouth, but it discharges more water than any of the adjacent streams which fall into Elkhorn.

John Payne states, that he has resided near North Elkhorn since 1788, that in the year 1792 he was appointed surveyor of Scott county, within which the land in controversy is situated, and that he became well acquainted with the forks and runs falling into Elkhorn on the north side, between Bryant's station and Lecompt's run.: the first is David's fork; the second, Little North fork; third, Cherry's run; fourth, Miller's run; fifth, Lane's run; sixth, Dry run; seventh, M'Cracken's run; the eighth, M'Connell's run; and the ninth, Lecompt's run.

Joseph R. Lee has been acquainted with Lecompt's run for thirty-two or three years; when he first knew it, there was a considerable growth of cedar and other timber near the mouth of the run, and about half a mile up it. Between the years 1802 and 1806, he lived within half a mile of the mouth of this run, and understanding a reward was offered to any one who should find the line trees or corner of Garnett's claim, he made diligent search, but was unable to find either, and he thinks, that if a corner had been marked within fifty or sixty yards of the mouth of the run, he should have found it. John Garnett lived near the mouth of Lecompt's run, and, as witness understood, lived under his brother's claim, but he heard John say, that he did not know where the lines and corners were. About thirty-three or four years ago he left the land.

Joseph S. Norris, under an order of court, measured the runs below Bryant's station, which fall into Elkhorn on the north side, and he considers Cherry's, Miller's and Dry run are larger than Lane's; Cherry's run has a large fork near its mouth, and he believes that either of these forks is as large as Lane's run. And the same may be said of the forks of Dry

run. If witness had been called to make the location at the mouth of the seventh big fork, as called for in Garnett's entry, he does not know whether he would have made it at the mouth of Lecompt's or M'Connell's run. Witness surveyed Garnett's claim, and at the time made diligent search for corners where there was timber, but found none. The first and second line terminated in cleared lands, the third in timbered land. He has known Lane's run since 1804 : when he first saw it, it was, perhaps, twice as wide as it now is.

John Garnett states, that he was present forty-five or six years ago, when the original survey of Reuben Garnett's entry was made, and, according to his best recollection, and indeed he is positive, the survey commenced about one hundred and fifty yards, more or less, above the mouth of Lecompt's run, at a large cedar which stood in the cliff of Elkhorn. By the direction of the surveyor he marked this line as a corner. From this tree the surveyor ran to a willow, oak and another tree, which were marked as the second corner, and the witness marked the line with a tomahawk. The surveyor then ran the same corner further on, and made lines and corners for Peter Samuel's claim, which adjoins Garnett's. . After running Samuel's claim, and coming back to Garnett's second course, the third line of Garnett's claim was run and regularly marked, and the corner also, but the line between Garnett and Samuel was not marked. About thirty-two years ago witness became acquainted with Lane's run, and it was not to be compared to the others as to size; it was so narrow, that, at times, the witness could jump across it. The witness took possession of Garnett's claim thirty-eight years ago, and remained on it about twelve years. He was turned out of possession by a judgment in ejectment, obtained on a title of Hodges. He was to have two hundred acres of the land, to be surveyed for him, and if it overpaid him for his services, he was to pay his brother.

Lewis Valandingham became acquainted with Lane's run in 1780 or 1782, and it was then considered a stream of the same magnitude as Lecompt's run, Miller's run, Cherry's run, and other runs which head in the dividing ridge. In 1782 Lecompt's run was known by that name. Between Bryant's station and Lecompt's run, the following runs fall into North

Elkhorn : Little North fork, Cherry's run, Miller's run, David's fork, Lane's run, M'Cracken's run, Dry run, M'Connell's run, and then Lecompt's run.

John Burns states, that about thirty or thirty-three years ago, Samuel Ayres offered him a reward if he could find a line or corner of Garnett's survey, and he hunted frequently but could find neither, and on inquiring of John Garnett, if he could show either a line or corner of the survey, he answered that he could never find either, but he supposed the land must be there. There was much cedar about the mouth of Lecompt's creek, and it entered up the creek, between a half and three quarters of a mile.

William Poindexter says, that John Garnett claimed his land about three quarters of a mile below Lecompt's run on Elkhorn.

Joseph S. Norris, a surveyor, under the order of the circuit court, made the following report as to the magnitude of the streams of water which fall into Elkhorn on the north side below Bryant's station. 1. David's fork at the mouth, is four poles and eleven links wide ; higher up, beyond back water, three poles and eighteen links. 2. Opossum run meanders at the mouth one pole at high water mark ; higher up, at common water mark, eighteen links. 3. Little North Elkhorn is four poles wide at the mouth ; higher up, beyond backwater, four poles ; and still higher, three poles and twenty links. 4. Cherry's run is two poles and twenty links wide at the mouth ; above back water, three poles and five links ; and still higher, three poles. 5. Miller's run is two poles wide and ten links at the mouth ; above back water, two poles and eight links ; still higher up, two poles and twenty links. 6. Lane's run is two thousand one hundred and six poles in length, equal to six miles one half and twenty-six poles, and measures, at the mouth, two poles and ten links high water ; common water, one pole three links ; above back water, one pole and eight links ; still further up, one pole and twenty links. 7. Dry run measures at the mouth, high water mark, five poles ; common water, four poles ; and higher up, four poles. 8. M'Cracken's run is three miles and a half and twelve poles long, and measures at the mouth one pole, and the same just below the forks. 9. Mile branch is a small

branch, measures the whole length, five hundred and sixteen poles. 10. Blue Spring run is nine hundred and sixty-five poles long, and one and a half poles wide at the mouth; higher up, one pole. 11. M'Connell's run is four poles and twenty-one links wide at the mouth, high water mark; higher up, three poles four links, common water mark. 12. Lecompt's run measures at the mouth, four poles and eighteen links; with high banks higher up, six poles.

This evidence establishes several points which are essential to the validity of Garnett's entry. At the time it was made, no doubt exists that Bryant's station was settled, and that North Elkhorn was generally known in the country. These two important calls in the entry could have been easily found; and the inquiry must be made, whether the locative or special call has been established.

The calls for Bryant's station and North Elkhorn, and the distance to the seventh big fork, are descriptive, and were designed to lead the inquirer to the locative or special call; which was intended to show, with certainty, the land covered by the entry. This call is "near the mouth of the seventh big fork falling into the north side of the north fork of Elkhorn."

Perhaps the words, "near the mouth," in this call, under the decisions of the Kentucky courts, might be construed to mean, at the mouth, which would give them reasonable precision, and this will leave the call for the "seventh big fork," the only point for investigation. Is this call certain? Would it lead an inquirer, with reasonable diligence, to the land now in controversy? If it would not, the entry cannot be sustained. The call for the "seventh big fork" is, in reality, sufficiently specific; but does it designate Lecompt's run, as insisted on by the complainants?

It appears from the evidence, that this stream of water was called Lecompt's run from the year 1776, and that this name was given to it by a man called Lecompt, who, in the preceding year made an improvement on it. The other runs falling into the north fork of Elkhorn on the north side, between Bryant's station and Lecompt's run, were named about the same time, but some of them were called by different names. If an object called for in an entry is well known by two names, so that it can be found by a call for either, such a call will

support the entry. It is therefore no substantial objection to the call for the "seventh big fork," that it was as well, or better known by the name of Lecompt's run, if this run be the "seventh big fork." Had the call been for Lecompt's run instead of the "seventh big fork," the evidence in the case would have established the entry, for the proof is clear that the run was known by that name generally, before the entry; but it must rest upon the call for this run, as the "seventh big fork."

Some of the witnesses state, that this stream of water was known by the name of the "seventh big fork" at the time of the entry; and others testify, that it is in fact the seventh. Taking the whole of the evidence together, it does not appear that the name of this run, as the "seventh big fork," is established; it may have been called by that name by a few persons, but many of the witnesses well acquainted with the country, and with this stream of water, before the entry was made and ever since, and who knew it well by the name of Lecompt's run, never heard it called the "seventh big fork."

Is it in fact the "seventh big fork?" This is a call which may now be ascertained, nearly with as much certainty, as when it was made. It is true the course of streams of water may change by time, and their currents and volume of water may be contracted or expanded, but such calls generally contain greater certainty and can be more easily established, than those which are artificial. A natural boundary is more certain, in most cases, than an artificial one, and is less liable to be altered by fraud or accident.

Several of the witnesses swear that Lecompt's run is the seventh big fork, but they are contradicted by others equally respectable, and whose knowledge of the different streams of water about which they testify, was at least equal to the knowledge of those whom they contradict.

Some of the witnesses say, that being at Bryant's station, with the calls of Garnett's entry to direct them, they could have found his land on Lecompt's run, without difficulty. If this be correct, the entry must be sustained, for it is the test by which a valid entry is known. But other witnesses equal in number, say, that they would have been led by these calls to look for Garnett's land on M'Connell's run, or some one above that of Lecompt's.

Here are differences of opinion among the witnesses, in regard to an essential fact, and if there were no other guide than the opinion of the witnesses, as stated in their depositions, it might be difficult for the court to come to a satisfactory conclusion. It is true, the affirmative facts must be proved by the complainants, before they can affect the rights of the defendants. The defendants are in possession of the land, and have been for many years, some or all of them, under legal titles, and the complainants seek to recover the land on the ground of their superior equity. Interests thus acquired, and which have been so long enjoyed, ought not to be disturbed by an equitable claim which is not clearly established.

If the complainants clearly sustain their entry by proof, their equity is made out, and they may well ask the aid of a court of chancery to put them in possession of their rights. But, if their equity be doubtful, if the scale be nearly balanced, if it do not preponderate in favour of the complainants, they must fail.

The court are not under the necessity of deciding this important point by a reference to the depositions alone, but they are aided by the report of the surveyor, who states the magnitude of the different streams of water falling into the north side of Elkhorn, which he ascertained from actual measurement. This presents the facts to the court in a more satisfactory manner than could be done by the opinion of witnesses. It makes certain that which before rested on opinion.

From this report it appears that Lane's run, which the complainants contend does not form one of the big forks that fall into North Elkhorn, is as large at the mouth as Miller's run, which is admitted to be one of those forks; and is as wide as Cherry's run, except ten links, which is also admitted to be a large fork. Lane's run is six and a half miles long, and, according to one of the witnesses, discharges more water than some of the adjacent branches.

If the call for the seventh big fork does not designate Lecompt's run, the entry cannot be held valid. And if Lane's run be as large as Miller's, and within ten links as wide at the mouth as Cherry's run, how can an inquirer, by following the directions in Garnett's entry, look for his land at the mouth of Lecompt's run. By what rules is he to pass over without

counting Lane's run, while he counts Miller's run and Cherry's. If the latter be ten links wider at the mouth than Lane's, the same cannot be said of Miller's. And if Lane's run be not counted as one of the big forks of Elkhorn, must not Miller's be passed over on the same ground ? But if Miller's run be counted, must not Lane's be counted also ? And if they be placed in the same class, as they must be, from their size, it is equally fatal to Garnett's entry, whether they be counted or not counted. If counted, Lecompt's run would be the eighth " big fork," if not counted, it would be the sixth; so that, in either case, the call does not fix the land of Garnett on Lecompt's run.

John Garnett, one of the witnesses, states, that the survey of Garnett's entry was made at the mouth of this run, and all the lines and corners regularly marked, except the line which was common to Garnett and Samuel. But, after the most diligent search, no trace of this survey can be found ; and, from other facts proved in the case, it is probable that this witness has mistaken the place where the survey was made. But, if this survey were fully established, as stated by the witness, it could not aid the defect in the special call of the entry.

It is a well settled principle, that if the essential call of an entry be uncertain as to the land covered by the warrant, and there are no other calls which control the special call, the entry cannot be sustained. In the case under consideration, there are no calls in the entry which control the call for the " seventh big fork," and that this call would better suit a location at the mouth of M'Connell's than at Lecompt's run, has been shown by the facts in the case. This uncertainty is fatal to the complainant's entry, and the decree, therefore, of the circuit court, which dismissed the bill, must be affirmed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Kentucky, and was argued by counsel; on consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed, with costs.