## SELDEN *vs.* VERMILYA and others.

A trust to sell real estate for the payment of debts ceases when the debts are in any mode paid or discharged.

A debtor conveyed lands to trustees upon trust to sell the same for the benefit of certain specified creditors, and to reconvey to himself such parts of the property as should remain unsold after satisfying the trusts. Afterwards he conveyed his residuary interest in the property to the same trustees *for the benefit of the same creditors,* and in *satisfaction* of their demands; the creditors on their part

accepting the trust fund *as a satisfaction* of their claims. *Held*, that the origi
nal trust was determined, and that the whole legal and equitable title to the
property became vested under the statute (1 *R. S.* 728, §§ 47, 49) in the creditors.

The conveyance by the debtor of his residuary interest to the trustees, was pre-
ceded by and in pursuance of an agreement between the debtor and the cred-
itors, in which he covenanted to execute such conveyance and they to discharge
their claims; and in the same instrument the creditors agreed among them-
selves that arrangements should immediately be made for the disposition of the
trust property, and that the same should be sold by the trustees, unless an ami-
cable division without sale should be sooner agreed upon. This agreement
was referred to in the subsequent conveyance of the debtor. *Held*, that the
agreement and conveyance did not have the effect either to continue the trust
estate in the original trustees, or to continue or create in them a *power in trust*
to sell the trust property.

And, the whole title of the debtor having vested in the creditors, the original
*cestuis que trust; held further*, that one of them might maintain against the
others a bill for the partition of the property.

An express trust in lands can not exist except for the purposes specified in the
statute of uses and trusts; and where a trust estate is attempted to be created
for a purpose not enumerated in the statute, no estate whatever vests in the
trustees.

It is indispensable to the creation of a trust or a power in trust, that authority to
perform the required act should be delegated to the trustee by the owner of the
estate or one having authority to dispose of it or of some interest therein.

THE bill in this cause was filed before the vice chancellor of
the first circuit, on the 25th July, 1847, for the partition of lands.
On the 2d of October, 1838, Benjamin W. Rogers borrowed of
the Farmers' Loan and Trust Company $38,000, and to secure
the payment thereof he conveyed to that company, in fee, cer-
tain lands in Livingston county, described in the bill. On the
same day the company executed and delivered to Rogers a dec-
laration of trust, reciting the loan of $38,000, and the convey-
ance in fee by Rogers, in trust, and among other things cove-
nanting on the receipt of the money loaned, &c. to reconvey to
Rogers the said lands, and the securities and moneys received
therefor.

On the 3d day of October, 1843, Rogers, by deed of trust con-
veyed certain property to Noyes and Ogden, two of the defend-
ants, in trust to pay certain bonds and notes therein specified,
which were for different sums and payable at different periods,
to Selden the complainant, and Vermilya one of the defendants,

the then holders thereof. This deed, among other things, reci-ted that in order to secure the payment of the several sums of money in which Rogers was indebted to the said Vermilya and Selden respectively, as above mentioned, he had agreed to con-vey to Noyes and Ogden, upon the trusts and for the interests and for the purposes thereinafter set forth, one hundred and thirty-eight shares in the Apalachicola Land Company, and the residuary interest of said Rogers in the lands in Livingston county aforesaid, and in the proceeds arising from the sale thereof, and also one of the shares, or twentieth parts, of and in four tracts of land, called Seneca reservations, subject to cer-tain payments and incumbrances mentioned. The deed then contains a description of the above property, and declared the trusts upon which it was conveyed; which were in substance, so far as they are material in the present case, as follows:

That whenever default should be made for thirty days in the payment of the notes or bonds, or any part of them, or the interest, as they should *fall due*, the trustees, on the written re-quisition of the cestuis que trust, Selden and Vermilya, or either of them, should sell at auction in the city of New-York, on ten days' notice, 1st. So many of the Apalachicola Land Co. shares as might be necessary to pay said bonds and notes, and charges of sale. And 2d. If the sale of said shares was insufficient for the purpose, then the trustees, on six weeks' notice, were to sell so much of the other trust premises as were necessary to make good the deficiency; and to grant and convey the same, as fully as Rogers could have done, before the execution of the trust deed. On the payment of the demands specified, the trustees were to account with Rogers for the surplus, and reconvey the remaining trust property to him.

Subsequent to the execution of the deed, and prior to the 14th Oct. 1846, Vermilya had transferred a part of the demands pro-vided for by the above trust, to Mr. Boyd and other persons, de-fendants in the suit. Boyd had required the trustees to sell, in pursuance of the trust, and they had advertised accordingly. On the day last above mentioned, Rogers and all the cestuis

que trust except two, entered into an agreement, which is as follows:

"Whereas, pursuant to the terms of a trust deed, bearing date the third day of October, 1843, whereby certain property was conveyed by B. W. Rogers to William Curtis Noyes and Richard H. Ogden in trust, to pay certain bonds and notes herein specified to Thomas Vermilya and David Selden, a requisition has been made by J. J. Boyd, the holder of a part of the said securities, originally belonging to the said Vermilya, for a sale of so much of the trust property as will be necessary to pay and satisfy the same; and whereas a sale has accordingly been advertised, for the 14th instant, of 138 shares of the Apalachicola Land Company stock, it is deemed for the advantage of the other parties interested, that an amicable arrangement should be made for the *final settlement* of *all claims existing* upon said property: It is agreed that the said Rogers shall release to the trustees aforesaid *all his residuary interest* in the property held by them in trust, *for the benefit* of the parties holding said bonds and notes; and that, upon said conveyance being made, he shall be discharged from *all further claim* on account of said indebtedness, *and the trust fund shall be accepted as a satisfaction of the same, and the said bonds and notes be surrendered to said Rogers or otherwise cancelled.*

*And it is further agreed, for the purpose of avoiding sacrifice by a forced sale, at the instance of one or more of the parties interested, and in order to make a proper settlement between all interested,* that the sale of the Apalachicola shares, advertised as aforesaid, be countermanded, and that *arrangement* be immediately made for the disposition of the *whole* trust property, that the same shall be offered for sale by the trustees, *unless an amicable division without sale shall be sooner agreed upon* without unnecessary delay, upon a reasonable advertisement of the time and place, and under such conditions as will conduce to bring about a sale to the greatest advantage of the *parties interested,* upon which sale any of the parties interested may become purchasers.

*And in the event of any of the parties not consenting hereto,*

*then a sale shall be made under the trust deed, upon the requi-*
*sition of the other parties subscribers hereto, for payment of*
*the bonds and notes held by them, which are now due.* It is
further agreed, that the charges incident hereto, including the
fee of the counsel of the parties upon the settlement with the
Farmers' Loan and Trust Company, which is fixed at $1000,
be paid out of the first proceeds of the sale.

This agreement to be binding upon *such parties* as shall
sign the same.

   In witness whereof we have hereunto set our hands and seals,
     this fourteenth day of October, in the year of our Lord
     one thousand eight hundred and forty-six.

(Signed,)   THOMAS VERMILYA.                      [L. S.]
            D. SELDEN.                            [L. S.]
            B. W. ROGERS.                         [L. S.]
            J. J. BOYD.                           [L. S.]
            JOHN A. STEVENS,  } Executors of      [L. S.]
                                will of
            BYAM K. STEVENS,  } S. Stevens.       [L. S.]
            ALEXANDER H. DANA.                    [L. S.]
            SAMUEL E LENT.                        [L. S.] "

The above agreement was ratified by Vermilya as the trustee
of V. J. and J. V. Christopher, the other cestuis que trust, who
were minors, on the 8th of February, 1847, by a writing annex-
ed to the agreement.

On the 28th of November, 1846, Rogers of the first part, by
deed of that date, released and conveyed all his right, title and
interest in the trust property held by Noyes and Ogden under
the trust of Oct. 1843, to the latter, as trustees. This deed in
its recitals referred to the previous trust, and to the agreement
of Oct. 1846, as follows: "And whereas an agreement has been
made and entered into between the said party of the first part,
and the said Vermilya, Selden, and other parties having an in-
terest in the said bonds or notes, bearing date the 14th day of
October, 1846, to the effect that the said party hereto of the first
part, should release to the parties hereto, of the second part, *for*
*the use and benefit of the holders of said bonds and promissory*
*notes,* all his *interest* in the property held by the said parties of

the second part, under the trust deed hereinbefore referred to, for the benefit of the parties holding said bonds and notes, and that upon such *conveyance being made*, the said parties of the first part should be discharged from all further claim *on account of such indebtedness*, and the said trust fund should be accepted as a satisfaction of the same, and the said bonds and notes be surrendered to said party of the first part, or otherwise cancelled."

On the 5th of February, 1847, Rogers, Noyes and Ogden, trustees, and the bond and note holder, cestuis que trust under the trust deed executed to Noyes and Ogden on the 3d of Oct. 1843, in pursuance of a previous arrangement between them and the Farmers' Loan Company, for the division of the lands in Livingston county, released all their interest in certain specified parts of those lands, to the Loan Company, with a view to settle and put an end to the trusts created by the deed of the 2d of Oct. 1838, in favor of said company. And the said company, at the same time, released to Noyes and Ogden, as trustees, all their interest in *other parts* of said land, in pursuance of the arrangement aforesaid. The release, and conveyance by Rogers, the trustees and cestuis que trust, to the company above mentioned, recited, among other things, the *names* of the persons who were *interested* in said bonds and notes, by assignment or otherwise from Vermilya, with the *amount* due thereon respectively. The agreement of the 14th Oct. and the conveyance of Rogers of the 28th of Nov. were referred to as follows:

"And whereas, by an instrument executed by the said B. W. Rogers, Thomas Vermilya, David Selden, John A. Stevens, and Byam K. Stevens, executors of Samuel Stevens, deceased, Alexander H. Dana and J. J. Boyd, bearing date the 14th day of October, A. D. 1846, it was agreed, among other things, that the said Benjamin W. Rogers should release to the said William Curtis Noyes and Richard H. Ogden, trustees as aforesaid, all his interest in the premises conveyed to them in trust, including the residuary interest in the lands in Livingston county, held as aforesaid by the Farmers' Loan and Trust Company ; and that, thereupon, the said Benjamin W. Rogers should be discharged of and from all further liability to the said parties,

and the said bonds and notes to be delivered up and cancelled; in pursuance of which agreement the said Benjamin W. Rogers did, by an instrument bearing date the 28th day of November, 1846, convey to the said William Curtis Noyes and Richard H. Ogden, trustees as aforesaid, *all his interest in the said premises for the benefit of the holders of said notes and bonds.* At the same time Rogers was released by the bond and note holders, from all claim, &c. upon those securities, in pursuance of the agreement of Oct. 1846, above referred to.

The defendants subsequently requested Noyes and Ogden to sell under the agreement of Oct. 1846. And they noticed the property for sale at the Merchants' Exchange in New-York, on the 25th February, 1847. The plaintiff avers in the bill, that the property, if sold so far from its location, will not command more than a small portion of the value thereof; that he is seised in fee simple, as a tenant in common, of nearly three-fourths of the property, and that the property is capable of partition. The bill then prays partition, by and between the plaintiffs and the several persons interested therein, according to their several shares therein, *as expressed or created in and by the several instruments, deeds and agreements hereinbefore set forth, or referred to in the bill.*

The cause was heard before the superior court in the city of New-York, upon bill, answers and replications, and upon a motion to refer the same to take proofs and such accounts as might be requisite. The motion was denied by that court, and the bill dismissed with costs. The complainant appealed to this court

*P. Y. Cutler & G. Wood,* for appellant.

*A. C. Bradley,* for respondents.

GARDNER, J. delivered the opinion of the court.

The original trust to Noyes and Ogden, created in October, 1843, by Rogers, for the benefit of Selden and Vermilya, was, I think, subsequently abrogated by the agreement and acts of all the parties interested. That it has been essentially modified is

admitted.    According to the provisions of this trust, the trustees
were authorized to dispose of the trust property, "to pay and
discharge the bonds and notes then held by the cestuis que trust
as they fell due respectively."    To pay off the demands men-
tioned in the prescribed order, was therefore the object of the
trust, as the indebtedness of Rogers to Selden and Vermilya was
the sole consideration for its creation.

By the agreement of October, 1846, executed by Rogers and
all the cestuis que trust then having claims upon the fund, after
reciting the trust and the proceedings under it, and that "it was
deemed for the advantage of the other parties that an amicable
arrangement should be made for the final settlement of all
claims existing against said property ; it was agreed that Rogers
should release to the trustees aforesaid, all his residuary inter-
est in the property held by them in trust, for the *benefit* of the
parties holding said bonds and notes, and that upon such con-
veyance *being made*, he should be discharged from all further
claim on account of said indebtedness ; and the trust fund
should be accepted, as a satisfaction of the same, and the said
bonds and notes be cancelled."    Upon the consummation of this
arrangement, the indebtedness of Rogers was discharged for an
agreed equivalent in property.    The original trust was at an
end.    The trustees had no duty to discharge.    They could not
sell the property, or give preference in the application of the
proceeds to the payment of demands, all of which were satisfied
and extinguished by the act of the parties.    The cestuis que
trust ceased to be creditors ; and I am unable to perceive how a
valid trust, " to sell land for the benefit of creditors," can be cre-
ated or continued, where the relation of debtor and creditor has
been annulled, and the indebtedness discharged by a legal ac-
cord and satisfaction.    Reliance has been placed, upon a clause
of the agreement of October, 1846, as distinctly recognizing the
continuance of the original trust.    That clause is as follows :
" And in event of any of the *parties* not consenting *hereto,*
*then* a sale shall be made under the trust deed, upon the requi-
sition of other *parties subscribers hereto,* for the payment of the
bonds and notes held by them. which have become due."    The

word "hereto" refers to the agreement about to be executed by bondholders. It was expected that all of them would become parties to the arrangement, it was possible that some might not, and in that contingency, and that only, a sale was to be effected under the original trust. Accordingly we find, that the Christophers, who held some of the securities, did not ratify the agreement by their trustee, until February, 1847, five months after its subscription by the other bondholders. Rogers had then released his residuary interest in the property to Noyes and Ogden; and all the bondholders having subscribed, or ratified, the agreement, the arrangement was consummated, and the provision above referred to became inoperative by the failure of the contingency, upon which it depended.

II. Did the agreement of October, 1846, with the instruments subsequently executed in its performance, any or all of them, create a new trust, or power in trust, authorizing the trustees to sell and distribute the proceeds of the property, conveyed to them by Rogers, among those who, at the time of its creation, were interested in the bonds and notes in question? This presents the second, and more important question in the cause, and the one which was principally discussed upon the argument.

The most that can be inferred from the agreement of 1846 is, the belief and expectation of the parties, that the trustees, by the conveyance of the residuary interest of Rogers, would acquire the legal title to all the trust property, and hold it subject to any arrangement, which the bond holders might make subsequently, for its disposition; and if none was made, that the trustees would be authorized to sell it for the benefit of those interested. If this expectation had been expressed formally in the deed from Rogers to the trustees, instead of being implied, from a preliminary agreement, it was unauthorized by the 55th section of the statute relative to uses and trusts, and would consequently have been void, as an *express trust*. It would not have been a trust "to sell lands for the benefit of creditors," in form or effect; because on the completion of the arrangement contemplated by the agreement above mentioned, the cestuis

que.trust ceased to be creditors, as I have endeavored to show. Neither was it a trust under the 2d subdivision of the section above quoted, "to sell lands to satisfy any charge thereon," because the indebtedness of Rogers, which was the only charge pretended, was by the agreement of the parties, converted into land, and of course ceased to be a charge upon it.

But in the second place, neither an express trust, nor a power in trust, was created or conferred upon the trustees by the conveyance of Rogers, or of any other person having the requisite authority; nor was there any stipulation to that effect, in the preliminary agreement. This objection, if well founded, is conclusive against the existence of either. The agreement of October, 1846, should be construed in reference to the different subjects embraced in it, and the separate interests of the parties, by whom it was executed. To that agreement Rogers and the bondholders were the only parties. The former covenanted that he would release to the trustees his residuary interest in the property held in trust for the *benefit of the parties* holding said bonds and notes. And the latter agreed that "upon *such* conveyance being made, Rogers should be discharged from all farther claim, on account of his indebtedness." This was all that Rogers was to perform or receive. The bondholders then agree with each other, " that an arrangement shall be made for the disposition of the *whole* trust property, and that the same shall be offered for sale by the trustees, unless an amicable division, without sale, shall be sooner agreed upon." This was a distinct subject of the agreement, in which Rogers had no interest, and to which he was not a party. What concern had he, for example, in the amicable division of the property, after his conveyance and discharge?

The whole clause presupposes a conveyance by him, and its object is to provide for a disposition of the property thus acquired. But nowhere in the instrument is the duty imposed upon Rogers to create a trust, or trust power for the benefit of the bond holders, nor do *they* stipulate for any thing of that nature among themselves. This has in effect been determined as to Rogers by this court. The cestuis que trust *assumed*

that the original trust would continue, notwithstanding the debts of Rogers were discharged, so far as to enable the trustees to take, hold and convey the legal title to the real estate. They did not therefore contract for its continuance, nor for the creation of a new trust, or trust power, as a substitute. It is impossible to mistake their views when we look at their acts, in performance of this agreement. On the 28th of November, Rogers released to the trustees his residuary interest, including whatever was before held by the loan company, for *the benefit of the bondholders*, and in performance of his covenant. It was accepted as such, and he was discharged from his indebtedness. Again, in the deed of confirmation and release to the Farmers' Trust and Loan Company, of the 5th of February, 1847, to which Rogers, the trustees and the bondholders were all parties the conveyance of Rogers to the trustees previously executed, is recited as being made in *pursuance of* the *agreement* of October, for the *benefit* of the parties interested in the trust.

In obtaining a conveyance, therefore, of the residuary interest of Rogers, to trustees, for the *use and benefit* of the bondholders, without any other provision whatever; the cestuis que trust received all that they had contracted for, and in the precise manner stipulated in the agreement with Rogers. They assumed, as has been suggested, that this process, which they had defined by contract, would vest the legal estate in the trustees for their use. This the law prohibited, and transferred the whole title, legal and equitable, to the beneficiaries, as tenants in common. (1 *R. S.* 728. §§ 47, 49.) There was no uncertainty, as has been intimated, as to the persons beneficially entitled, nor as to their share in the property, respectively. Both are particularly stated, in the deed of the 5th of February above mentioned, and the cestuis que trust in addition covenant that they are the bona fide holders of all the bonds and notes remaining unpaid. An erroneous assumption, by the cestuis que trust, arising from a mistake of the law, can not control the legal effect of the conveyances executed in pursuance of their agreement. Nor will it alone furnish foundation for a trust or a power in trust. A power is defined, by statute, to be an au-

thority to do some act in relation to lands, which the owner granting the power, might himself lawfully perform. (1 *R. S.* 732, § 1.) An express trust includes a power and more. There-fore, where an express trust is created for a purpose, not enu-merated in the statute, no estate vests in the trustees, but the power continues, and may be exercised, in the performance of any act, *directed* or *authorized* by the trust, which may law-fully be performed under a power. (1 *R. S.* 729, § 58.) But it is indispensable to the creation of a trust, or a power in trust, that the authority to perform the required act should be right-fully delegated to the trustee, by the person having authority to dispose of the estate, or some interest therein, in the manner di-rected by the trust or power. This has not been done in the present case. If Rogers was the owner of the lands in question, within the spirit of the rule suggested, as the defendants insist, he has not granted, or assumed to grant, to the trustees an au-thority to sell the trust property, and distribute the proceeds. The loan company could not delegate it, for they were but trustees, with a mere lien upon the lands, which was satisfied when they conveyed to Noyes and Ogden. The latter took the interest of Rogers, by virtue of the original trust; the convey-ance of the company operating only as a release of a prior charge upon the estate. The bondholders could grant no such power, for at the date of their agreement, in October, 1846, they had only an interest in the original trust, and none whatever in the real estate. (1 *R. S.* 729, § 60.) Nor did they assume to do any thing of the kind. Again. The agreement of October is not a part of the subsequent conveyances, executed in pursuance of it. It can not be legitimately used to supply their deficien-cies. It shows what ought to have been done by way of per-formance, not what was done.

The cases to which we have been referred as to the effect of the recital of one instrument in another, can not aid the de-fendants. (8 *Peters*, 83, 88; 8 *Cowen*, 586.) Because the part of the agreement upon which they rely to raise the trust, is not recited in, and consequently is not a part of, any conveyance subsequently executed; and because if it had been, it would

show an agreement between the cestuis que trust, that the trustees should sell upon a certain contingency, *after* they had obtained the title. Not that Rogers, or any other person, should grant them such authority.

We think, for the reasons suggested, that the defendants have failed to establish an express trust, or a power in trust, for the sale of the lands in question. We think, also, that there are decisive objections against implying, from the agreement of the cestuis que trust, an irrevocable power of attorney to the trustees to dispose of this property. It is not the contract of the parties, but an equitable substitute. It can only be justified upon the ground that it will effect their real purpose, although by a different instrumentality from that which they have prescribed. The defendants affirm, in their answers, that their object in procuring a conveyance to trustees was, " to give them the *power* to dispose of the entire property, and close up the trust." This could be effected by a trust, or a power in trust, which would enable the trustees to transfer the title which they received, and not otherwise. A power of attorney must be executed in the names of the cestuis que trust, in whom the title was vested, subject to all incumbrances, dower included, which might exist at the time of the sale ; not to speak of the difficulty in relation to those who were minors. The trustees could not bind their principals, or any of them, by a covenant, even against incumbrances imposed for their own benefit, by their own act. A partition would be a far more equitable method of adjusting the rights of the tenants in common, than by a sale by virtue of a power of attorney, under such circumstances, if indeed a purchaser could be obtained. It is to be inferred that this is the view of the defendants, as their counsel disclaimed all reliance upon this point, and placed the defence exclusively upon the other grounds which have been considered. The decree of the superior court must be reversed.

And thereupon the decree of the superior court was reversed, and a decree for partition directed to be entered with special provisions.