FRANCISCO GUILBEAU v. WILLIAM D. MAYS AND OTHERS.

Where there was no record of a prior grant in the General Land Office, nor in the county where the land was situated, at the date of a subsequent location, the subsequent location will hold the land, unless the locator had actual notice of the previous appropriation of the land, or the facts were such as would have put a prudent man upon enquiry, under such circumstances that the enquiry would probably have resulted in the ascertainment of the truth.

Appeal from Bexar.

*Wilson & Waul* and *Hewitt & Newton,* for appellant.

*I. A. & G. W. Paschal,* for appellees.

LIPSCOMB, J. The plaintiff claimed under a grant of a

league of land to each of the grantees, DeLeon and Gomez. The defendants pleaded not guilty; prescription of three years; also that there was no record of the plaintiff's grant in the General Land Office, nor in the county where the land was situated; that they, the defendants, held by patents issued from the Government of Texas, and locations of valid certificates, without notice of the plaintiff's title. They also pleaded that the plaintiff's vendors were aliens, incapable of holding or suing for land, and incapable of conveying title to the plaintiff.

The plaintiff showed no evidence that the grants to DeLeon and Gomez had been deposited in the General Land Office, or recorded in the county where the land is situated, or delineated on the county map, or the maps in the General Land Office. One witness swore that he knew that DeLeon and Gomez had land granted to them, and that it was a matter of notoriety; and another swore that he knew the land, and was one of the chain carriers when it was surveyed. There was no evidence that the land had been settled, or that boundaries had been marked out to designate it, so as to give notice that it had been appropriated as private property. The defendants showed patents for a part of the land, and locations and surveys for the balance, to Henry Lewis, and a deed duly recorded in the office of the Clerk of the County Court, conveying the land to Mays in 1848. The record shows that this suit was commenced in January, 1853, and there is no evidence of notice previous to this time, to Mays, of this adverse title, on which this suit is instituted, unless a presumption of notice to him can be raised from the evidence before cited.

The inconvenience and actual injury to the country and its citizens, from not knowing what land had been appropriated and set apart from the public domain, seems to have been fully understood and felt by our Government, at its first organization. It was not only an inconvenience, but a loss to them who had claims upon the Government for land. They would be often subjected to a loss of time and expense, in their loca-

tions and surveys. When acting with perfect fairness and in good faith, with the strongest wish to avoid an interference with a previously acquired title, they would find from an ignorance and want of notice of such older title, that they had located and surveyed upon one.

In the last paragraph of the 10th Article of the general provisions of the Constitution of the Republic, it is declared, that, " with a view to the simplification of the land system, and the " protection of the people and Government from litigation and " fraud, a General Land Office shall be established, where all " land titles of the Republic shall be registered; and the whole " territory of the Republic shall be sectionized in a manner " hereafter to be prescribed by law, which shall enable the of- " ficers of the Government, or any citizen, to ascertain with " certainty the lands that are vacant and those lands which " may be covered with valid titles."

This General Land Office, required by the Constitution, was created by the Act of Congress of 22nd December, 1836. (Hart. Dig. Art. 1782.)

By the first Section of a joint resolution concerning public lands, passed 14th December, 1837, (Hart. Dig. Art. 1835,) it is enacted, " That it shall be the duty of every person or per- " sons who may have in his or their possession or control any " titles or documents whatever which relate to lands, and " which, by the laws now or heretofore existing in Texas, have " been and are considered archives, to deliver the same to the " Commissioner of the General Land Office, on his order, with- " in sixty days after the final passage of this Act." And by the 40th Section of the Act of December 14th, 1837, (Hart. Dig. Art. 1840,) it is enacted " that each county in the State " shall be considered and constitute a section, and that each " County Surveyor be required as soon as possible to make or " procure a map of each county, on which plats of all the " deeded lands in the said county shall be made, so as to make " a fair showing of the same."

For the object of the above Acts, and the several Acts of Congress requiring maps of the several counties, see Smith v. Power, (2 Tex. R. 70–1.)

By the 37th Section of the Act of December 20th, 1836, (Hart. Dig. Art. 2754,) it is enacted : " Any person who owns " or claims land of any description, by deed, lien or any other " color of title, shall, within twelve months from the first day " of April next, have the same proved in open Court, and re- " corded in the office of the Clerk of the County Court in " which such land is situated ; but if a tract of land lies on a " county line, the title may be recorded in the county in which " part of said land lies." The 40th Section, same Act, (Hart. Dig. Art. 2757,) declares " no deed, conveyance, lien or other " instrument, shall take effect, as regards the' rights of third " parties, until the same shall have been duly proved and pre- " sented to the Court, as required by this Act for the record- " ing of land titles ; and it shall be the duty of the Clerk to " note particularly the time when such deed, conveyance or " other instrument is presented, and to record them in the or- " der in which they are presented." The Act of the 10th May, 1838, enacted that so much of the 37th Section of an Act en- titled " An Act organizing the Inferior Courts, and defining " the powers and jurisdiction of the same, approved 20th De- " cember, 1836, as requires recording before the first day of " April, 1838, be and the same is hereby repealed." This mod- ification of the thirty-seventh Section of the Act above cited will only change its effect so far as that Section required the record to be made within the time limited, and it will then read, " any person who owns or claims land of any description " by deed, lien or any other color of title, shall have the same " proved in open Court, and recorded in the office of the Clerk " of the County Court where the land is situated, but if a tract " of land lies on a county line, it may be recorded in the county " in which part of the said land lies ;" leaving it still obliga- tory on the owners of such evidences of claim, lien or title, to

have them recorded, and subject to the same consequences if not recorded, by the fortieth Section of the same Act, as to any intervening rights of third parties, is imposed or declared.

Subsequent legislation has not materially changed the Acts we have cited. It has modified the law in relation to the proof, but the same protection is given to third parties, without notice; and it is believed that the Act of January 19th, 1839, (Hart. Dig. Art. 2761,) has a direct reference to the description of titles on which this suit was brought; it is as follows, i. e. : " That copies of all deeds, &c., when the originals " remain in the public archives, and were executed in conform- " ity with the laws existing at their dates, duly certified by the " proper officers, shall be admitted to record in the county " where such land lies." It is well known that in the case of most, if not all, the titles to land executed prior to our separation from Mexico, the original remained as an archive, and a testimonio was given to the interested party as an evidence of title. But for this last enactment, it might be contended that a testimonio, being only an authentic copy, was not required to be recorded in the county where the land was situated. This Act leaves no doubt on the subject, that this kind of evidence of title also ought to be recorded.

In view of the legislation on the subject, it is believed not to be susceptible of a doubt that the grants upon which the plaintiff bases his right to the lands in question ought to have been recorded, and their failure so to be recorded, or delineated on the maps, or other notice, will postpone them to a junior title, derived from the Government, and will place the defendants in the position before the Court, as innocent purchasers without notice, and in principle not distinguishable from the great class of cases of innocent purchasers without notice, of any prior or superior title.

It is a maxim of the law, approved by the soundest test of morality, that you may use your own as you please, so that you do not injure another thereby. If you think proper, you

may stand by and see another improve and build upon your land, believing it to be his own, and give him no notice that it is on your land that he is so expending his labor and money ; but be assured that by so doing you will lose your right to the land and improvements. So you may, if you think proper, put your title in your trunk, without having it recorded ; but if you do so, and an innocent purchaser should buy the same land from the person or the sovereignty possessing the original titles, your elder title must and will give way to the junior title ; and it is the consequence of either your neglect or fraud, it matters not which. It shall not be made the occasion of an innocent party suffering loss.

The defendant Mays was a purchaser for a valuable consideration from Lewis, who had acquired title from the State, and it is evident that neither of them had notice from the record, or any public map, that there was an adverse claim to the land in controversy, and both must be regarded as purchasers for a valuable consideration, and must be presumed, in the absence of notice which the laws of registration required, to be purchasers without notice.

I am aware that the general doctrine on the subject of recording titles, required to be recorded, is subject to the qualifications, that though not registered, still, it is binding between the parties, and also binding on those who have notice ; and further, that it is not necessary that actual notice should be given to third parties ; yet, I believe that the latter conclusion has arisen, where the Statute requiring the registration has not been so explicit and peremptory as the 40th Section of the Act of December, 1836. The Statutes of most of the States leave the consequence of non-registration to be, that it shall not affect subsequent purchasers for a valuable consideration without notice, nor the title between the parties. Ours is explicit that it is not to affect third parties, until it is recorded, without the qualification of notice or no notice. I therefore believe that notice does not supply the failure of the requisition of the law, that it shall be recorded. But it has been

ruled otherwise in this Court in the case of Crosby v. Houston, (4 Tex. R. 23,) when it was held that notice to the party would supply the want of the proof and registration required by this Section, and of course it is the law of the Court. I did not participate in that decision, and this is my apology for expressing my own opinion here.

We will now look to the facts, for the proof of notice to the defendants. There is no pretence that actual notice of the plaintiff's title was brought home to the defendants, and if he is to be affected with notice, it must be a presumption from the notoriety of the title of the plaintiff's vendors.

If certain facts are a matter of general notoriety in a neighborhood, a presumption will in general arise, that all who are interested will be apprised of the existence of those facts, or their supposed existence; and if, from this rumor, a prudent man could ascertain the truth, he will be regarded as affected with notice. Now, what is the fact that the witness testified was notorious? It was, according to the witness, that DeLeon and Gomez had received land from the Government, on the Cibolo. A prudent man would, before he made a purchase or located on the land, go to the parties said to be the owners of the land, and enquire if it was true, and enquire the extent and locality of the land so claimed; and if the claimants were non-residents he would enquire of their agent, if they had one; but suppose the witness had gone further than he did, and sworn that the metes and bounds of the land were equally notorious, a prudent man would have examined for himself, and if the metes and boundaries were found, or, if not precisely marked out, if there was sufficient found to show him that the land had been appropriated, he would be affected by this notice. If, however, upon a diligent examination, he could find no heirs nor anything to show that the land had been run out, and the parties for whom rumor had claimed the land were not in the county, and no known agent, the party purchasing or locating would have no implied notice. This, in principle, is analogous to the ruling of this Court in Lewis v. Durst, (10 Tex. R. 398,)

applied to a location of a land certificate. In that case we say, on the authority of Washington C. C. R. 81 ; 9 Wheaton, 673 ; 1 Id. 730 ; 2 Id. 206 ; 8 Peters, 75 : "It is believed to "be well settled, that to make a valid location or entry, it "should be attended with such circumstances and facts of no- "toriety as would furnish a person of ordinary diligence, no- "tice that the land had been located. This is the rule be- "lieved to prevail where the mode is not particularly pointed "out by express law. When the land had been surveyed, the "marked lines would give something to put a subsequent loca- "tor on his guard." It does not appear that the land had been improved, nor that there were any marks notorious, by which it could be known. Now, in cases of title emenating from the Government, where the patent or testimonio had not been recorded in the county where the land lies, the archives of the General Land Office, and the maps of survey, and the record and maps of the County Surveyor, would be regarded as notice that the land was appropriated and was not a part of the vacant domain of the Republic. In this case the noto- riety testified to only went to the fact that the grantees under whom the plaintiff claims title, had received land on the Cibo- lo, but nothing is furnished to those wishing to locate, to show the particular land so granted. One of the grantees was dead, and his family, together with the other grantee and his family, went off to Mexico in 1835, and have remained there ever since, leaving no record, no map, no marks by which the par- ticular land could be known, to designate it as having been set apart from the public domain ; no agent or tenant in posses- sion, to show the most cautious enquirer the particular land so claimed. Nine years after such abandonment, they sell this land to the plaintiff, and before any notice by record, map, or in any other way, of their right, the defendants and those un- der whom they claim, had acquired a title for the same land from the Government, settled it and made valuable improve- ments, worth ten or fifteen thousand dollars. Under such cir-

cumstances can it be doubted that those defendants are inno-cent purchasers, and are entitled to be protected as such. If the plaintiff has suffered the loss of title, the loss is to be as-cribed to his own negligence, or the negligence of his vendors in disregarding the requisitions of the laws requiring them to record the title, and leaving the land unoccupied, and no one to designate his claim of title. It would be unjust to deprive the defendants of rights derived from the Government under such circumstances. It is a rule of universal application, that where one of two persons must suffer, the loss must fall on the one who has been most in fault.

The wisdom and sound policy of our registration laws, and *the construction we have* put upon them, will be manifest from the fact that thereby fraud and the forgery of titles purporting to have been made before the closing of the different Land Of-fices by order of the Consultation, will, in a great measure, if not entirely, be cut off or rendered harmless; but for this, it is impossible to perceive the extent to which these frauds could have been successfully perpetrated.

The view we have taken of the defence, under the plea of innocent purchasers without notice, will dispose of the case, and renders it unnecessary to pass on the plea of alienage, and the plea of the Statute of three years possession under color of title. We will therefore refrain from an expression of an opinion on those points, until presented in a case where it will be necessary to the disposition of the case, that they should be decided. The judgment is affirmed.

Judgment affirmed.