JOSEPH CHAPIN, Appellant, *v.* ALFRED G. CURTENIUS et. al., Appellees.

APPEAL FROM PEORIA.

In actions of ejectment, the court may allow a declaration to be amended by adding a count, making new parties plaintiffs.

In the redemption of land belonging to infants, sold for taxes under the law of 1839, if the clerk has failed to file the affidavit by which the right to redeem was established, it will not prejudice the party making the redemption. The right to redeem may be shown if the validity of the redemption is questioned.

It is not erroneous to permit a plaintiff in ejectment to withdraw from the consideration of the jury a record of sale by a guardian, and a deed which was so defective as not to vest title.

AT the March term, 1852, Curtenius & Griswold filed their declaration in ejectment in the Peoria Circuit Court, against Hardin Davis, to recover the S. W. 18, 10 N. 7 E. in said county. Plaintiffs claimed title in fee-simple, and at the same time said Chapin, the landlord of Davis, was substituted as defendant, and pleaded the general issue to the declaration.

At the May term, 1853, plaintiffs moved to amend their declaration, by adding a new count, making the heirs of Benjamin Freeman, deceased, plaintiffs, and alleging title in them, and to support said motion read the affidavit of N. H. Purple, that a record of a sale by the guardian of the minor heirs of Freeman, constituted a portion of plaintiffs' title; plaintiffs having bought the land at such guardian's sale, and paid the full purchase-money, and received a deed therefor, supposing the proceedings to be regular. That the entire equitable interest is in the plaintiffs. That affiant had not seen the record when he commenced suit, the proceedings having been had in Montgomery county, but he thinks it may be doubtful whether there is not a technical objection to said record as evidence of legal title.

At the November term, 1853, leave was granted to amend, as asked, at the costs of plaintiffs; defendant excepted to the decision, and the declaration was amended. At same term, trial was had, and verdict rendered for the Freemans. A bill of exceptions was taken, by which it appears that the plaintiffs, to maintain the issue on their part, read in evidence,

1. A patent from the United States to Benjamin Freeman, assignee of Chapin, for the land in dispute, dated June 18, 1848.

2. Deposition of David B. Clackson, who proved that Benjamin Freeman died on or about July 18, 1841, leaving nine children, five of whom only survive, and the eldest of whom, Benjamin S. Freeman, is 26 years old. The second was 21 years old, on or about the 14th January, 1853. The other three survivors, namely, Edmund, James, Anna, and Mary Freeman, are all minors. Said heirs are made the plaintiffs in the amended declaration. Plaintiffs next read in evidence, without objection, a record of the Montgomery circuit court, whereby it appears that Sarah S. Childs, mother of said heirs, and former widow of said Benjamin Freeman, deceased, applied as guardian by petition for an order to sell certain real estate of the minors, including the *locus in quo.* The application was made at the November term, 1848, and decree for sale then made. At November term, 1849, the guardian made her report, and (*inter alia*) that she had sold the *locus in quo*, to Curtenius & Griswold, and made deed thereof to them. Plaintiffs next read in evidence the deed from said guardian to Curtenius & Griswold, predicated on said sale, and there rested their case.

Defendant then offered and read in evidence a judgment of the circuit court of Peoria county, rendered May 26, 1845, for the taxes of 1844, against said S. W. 18, 10 N. 7 E.; 155¾ acres; taxes $3.26; costs 40 cents. The judgment is in the usual form.

Defendant next read in evidence the precept issued on said judgment to the sheriff, also in the usual form, and the return of the sheriff thereon, that he had, among other tracts, sold the land in question to the defendant.

Defendant next read in evidence a deed from the sheriff of Peoria county to defendant, for said land, reciting the sale for taxes, &c., in the usual form, and defendant here rested his case. This evidence of defendant was all objected to by plaintiffs.

Plaintiffs then offered in evidence the copy of a bond from Benjamin Freeman to defendant, and in connection therewith read an affidavit of N. H. Purple, stating that he had had the possession of the original bond about two months before, and thinks he delivered it to J. K. Cooper, counsel of defendant, but will not state this positively. That he has searched amongst all his papers where the same would be likely to be, and cannot find it; and if the same was not delivered to said Cooper, he believes it must be lost; that he served notice on said Cooper, &c. Defendant objected to reading the copy, but the court overruled the objection, and admitted the copy in evidence, and defendant excepted to the decision. This bond or contract

Chapin *v.* Curtenius et al.

stipulated that Freeman would convey the *locus in quo* to Chapin, upon his paying Freeman $186, in one year from date, at Peoria, and reserves the right to ratify or confirm the sale or not, if Chapin fails to pay at the time and place mentioned. This contract is dated November 6, 1840.

The plaintiffs then offered and read in evidence the record of proceedings in the circuit court of Peoria county, in chancery, in a suit in which the administratrix and heirs of Benjamin Freeman, deceased, were complainants, and Joseph Chapin was defendant, in which suit a decree was made, that said heirs be empowered to convey said land to said Chapin, upon his paying the sum of $196 in twenty days from the date of said decree. The date of said decree is June 3, 1843. To the reading of which defendant excepted. Plaintiffs next called Perley E. Blakesley, who proved, that defendant was in possession of said land from 1835 or 1836 till 1844, built a log cabin on it; fenced in an acre; left it and removed to another part of the county early in March, 1844; sold off, at the time of his removal, the rails in the fence, and every thing on the premises, except the cabin, and wholly abandoned this. That once in 1847, and again in 1849, said cabin was taken possession of temporarily by other persons, occupied on each occasion for a short time, and again deserted. That in 1850, defendant put a tenant in the house; and went in himself, in 1851, claiming to hold under his tax title. Plaintiffs here rested.

Defendants then called Hiram Chapman, who proved substantially the same facts as said Blakesley.

Plaintiffs then stated that they had unintentionally omitted one piece of testimony, and asked leave then to introduce a certificate of the county clerk of Peoria county, that George Porter, agent of the heirs of Benjamin Freeman, had paid $7.32 for redemption money, due on S. W. 18, 10 N. 7 E., 155¾ acres of which were sold to Joseph Chapin, by the sheriff, in June, 1845, for the tax, interest, and cost due thereon, for the year 1844, and the sum of $5.66, taxes and interest due thereon for 1850. This certificate is dated January 10, 1852, and in the figures at the bottom, the $5.66 is called the tax of 1845. To the reading of this certificate defendant objected, but the court allowed it to be read, and defendant excepted.

Defendant then offered to prove affirmatively, that said certificate was issued by the clerk without there being filed in his office any evidence or papers to authorize the granting of the certificate, which was overruled, and the defendant excepted.

The court then instructed the jury, that from all the evidence in the case, the heirs of Freeman had shown title in themselves,

and if they believed the evidence given, said heirs were entitled to a verdict, and defendant excepted to the giving of the instruction.

Plaintiffs then asked leave of the court to withdraw the record of the Montgomery circuit court, above mentioned, and the said deed of the guardian to Curtenius & Griswold. The court granted the leave, and the defendant excepted.

The jury found a verdict in favor of the heirs of Freeman, and that they have a fee-simple title.

Defendant then moved for a new trial, which motion was overruled, and the defendant excepted to the decision.

This cause was heard before WEAD, Judge, at November term, 1853, of the Peoria Circuit Court.

PETERS and COOPER, for appellant.

N. H. PURPLE, for appellees.

TREAT, C. J. At the March term, 1852, of the Peoria circuit court, Curtenius & Griswold filed their declaration in ejectment against Davis, claiming to recover in fee the south-west quarter of section eighteen, township ten north, of range seven east. The parties appeared at the same term, and stipulated, that Davis was in the possession of the premises as the tenant of Chapin, and that the latter should be substituted as defendant. He thereupon pleaded not guilty. At the May term, 1853, the plaintiffs moved the court for leave to amend the declaration, by adding a count, making the heirs of Benjamin Freeman plaintiffs; and they filed an affidavit of their attorney in support of the motion. He stated that the record of a sale made by the guardian of the heirs of Freeman constituted a part of the plaintiffs' title, they having purchased the premises at the sale, and paid the consideration in full, and received a deed in due form from the guardian; that the entire equitable interest in the premises was in the plaintiffs; and when the suit was commenced, the affiant had not seen the record, the proceedings having been had in Montgomery county; and that on examination of the record, he thought there was a technical objection to its being read as a portion of the plaintiffs' title. At the November term, 1853, the court sustained the motion, but required the plaintiffs to pay all the costs of the case up to that time. The plaintiffs thereupon added another count to the declaration, in which the premises were claimed in fee by the heirs of Freeman. The cause was then submitted to a jury for trial.

The plaintiffs introduced the following evidence. 1. A pa-

tent for the premises, from the United States to Benjamin Free-
man. 2. Proof that Freeman died intestate in 1841, leaving
the persons named as plaintiffs to the second count his heirs at
law, some of whom were still minors. 3. A record of the Mont-
gomery circuit court, showing an application by the guardian
of the heirs for the sale of the premises, an order of the court
directing the sale, and a report of the guardian, showing a sale
to the plaintiffs. 4. A deed from the guardian to the plaintiffs.

The defendant then read in evidence a judgment of the Peoria
circuit court, entered at the May term, 1845, against the prem-
ises and other real estate, for the taxes due thereon for the pre-
ceding year; also, a 'precept issued on the judgment, under
which the premises were sold to Chapin on the 10th of June,
1855; and a sheriff's deed to Chapin, bearing date the 21st of
March, 1851.

The plaintiffs then offered in evidence the following cer-
tificate: —

" State of Illinois, Peoria county.

      Clerk's office, county court, Peoria, January 10, 1852.

I, Charles Kettelle, clerk of said court, do hereby certify, that
George Porter, agent for heirs of Benjamin Freeman, has this
day paid me the sum of seven dollars and thirty-two cents, for
redemption money due on the south-west quarter of section
eighteen, township ten north, of range seven east, 155¾ acres of
which were sold to Joseph Chapin by the sheriff of said county,
in June, 1845, for the tax, interest, and costs due thereon for the
year 1844. Also the sum of five dollars and sixty-six cents,
taxes and interest due thereon, for the year 1850.

                                   CHARLES KETTELLE, Clerk."

The defendant objected to the introduction of the certificate,
but the court admitted it in evidence. He then offered to prove
affirmatively, that the certificate was issued without there being
filed in the clerk's office any evidence authorizing the redemp-
tion of the premises; but the court excluded the evidence.

The court, against the objection of the defendant, allowed the
plaintiffs to withdraw from the consideration of the jury, the
record of the Montgomery circuit court, and the guardian's
deed. The jury found the defendant guilty of withholding the
possession of the premises from the heirs of Freeman, in which
they had an estate in fee-simple; and not guilty as to the plain-
tiffs, Curtenius & Griswold. The court refused to grant a new
trial, and judgment was rendered on the verdict.

1. The court committed no error in permitting the declara-
tion to be amended. Applications of this character are ad-

dressed to the sound discretion of the court; and we are not prepared to say that the discretion was improperly exercised in this instance. The statute declares: " In any case other than where the action shall be brought for the recovery of dower, the declaration may contain several counts, and several parties may be named as plaintiffs jointly in one action, and separately in others. If it appear that one or more of the plaintiffs have a right to the possession of the premises, and one or more have not such right, the verdict shall specify for which plaintiff the jury find, and as to which plaintiff they find for the defendant." Under these provisions, the plaintiffs might originally have brought the suit precisely as it stood after the amendment was made. The allowance of the amendment was but carrying out the obvious design of the statute, that all questions affecting the title to the premises may be settled in one proceeding. It merely dispensed with the necessity of bringing another action in the joint names of the plaintiffs and the heirs of Freeman. The discretion of the court was not exercised to the prejudice of the defendant, for the plaintiffs were required to pay all the costs that had accrued in the case.

2. The act of the 26th of February, 1839, under which the premises were sold for taxes, provides that lands belonging to infants may be redeemed at any time within one year after the youngest of them shall arrive at the age of twenty-one years, by paying to the clerk of the county commissioners' court " double the amount for which the same was sold, and all taxes accruing after such sale, together with the interest on the amount of each year's tax." It further provides that " any person claiming the right to redeem land under the provisions of this section, shall produce to the clerk of the county commissioners' court of the proper county, the affidavit of some credible person, stating who owned the same at the time of the sale thereof;" and " if there were several infant owners, stating that fact, and stating the age of the youngest of such infants; and if the clerk shall be satisfied, from the facts stated in the affidavit, that the lands proposed to be redeemed are subject to redemption under the provisions of this section, or any other law of the State, he shall file the affidavit so presented, and permit the lands to be redeemed, upon the conditions which are or may be required by law; and such redemption shall operate to restore to the owner or owners of the land, his, her, or their heirs or assigns, all rights which he, she, or they had in and to the land at the time of sale: Provided, however, that the certificate of redemption shall not be evidence of any other fact than that the redemption money was paid." The certificate of

redemption in this case being in proper form, was clearly admissible in evidence. It proved the payment of the redemption money by the heirs of Freeman ; and it appeared from the other evidence in the case that they had a clear right to redeem. This proof showed a valid redemption from the sale to the defendant, and that the heirs were reinstated in all their former rights in the premises. The certificate itself was not evidence of such a redemption. The statute only makes it evidence of the payment of the redemption money, leaving the right to redeem to be established by other proof. The question whether there has been a valid redemption of the lands of infants does not necessarily depend on the fact, that the clerk has or has not preserved the proof upon which the redemption was founded. The statute requires an affidavit of the facts to be presented to the clerk and filed by him. Two objects are contemplated by this requisition. The affidavit furnishes the evidence upon which the clerk is to determine the right of the party to redeem ; and it is to be preserved for the benefit of all who may be interested in the land. The mere failure of the clerk to file the affidavit, ought not to prejudice the party making the redemption. If the evidence is not preserved, he should be permitted, when the validity of the redemption is drawn in question, to show that he had a good right to redeem. So if the decision of the clerk is not conclusive, and he allows a redemption upon insufficient proof, the party should be permitted to sustain his right to redeem when put in issue. The ruling of the court upon this branch of the case was unexceptionable.

3. There was no error in permitting the plaintiffs to withdraw the record and guardian's deed. That evidence showed no title in Curtenius and Griswold. According to the construction given to our statute, in the case of Young v. Keogh, 11 Illinois, 642, the purchaser of real estate at a guardian's sale acquires no title, unless the proceedings are reported by the guardian, and confirmed by the court. The deed of the guardian, without this confirmatory order of the court, vests no title in the purchaser. In this case, the guardian made return of the proceedings, but they were not approved by the court. As these proceedings neither vested title in Curtenius and Griswold, nor diverted the title of the heirs of Freeman, they were properly withdrawn from the consideration of the jury.

The judgment must be affirmed.

*Judgment affirmed.*