By the Court.*—Robinson, J.
The material questions upon this appeal and upon the same title now in question, have already been passed upon, by the superior court, † at general term, in May, 1871, in the case of Henry Bowen v. this same defendant, and in *161 the supreme court at special term, by Judge Fanchee, in the case of Ellsworth v. Muldoon.* In the general reasoning of these courts in those cases, and in their results, I concur, but venture to add these further considerations, which influence my decision.
1st. That notwithstanding the assignment made by Francis Price, the judgment debtor, to John J. Latting, receiver, dated September 10, 1847, he still had the right of redemption of his real estate, previously sold upon execution on the judgment against him, under which defendant claims title.
The action in which Mr. Latting was so appointed receiver, was not one, in rem, relating to real estate or within the common-law powers of the court of chancery, in which it was pending, having reference to fraudulent trusts or conveyances of real estate or one affecting the title to the land. It was a proceeding in the nature of a creditor’s bill, as authorized by the provisions of the revised statutes (2 Rev. Stat., 174), to collect a judgment recovered by Thaddeus B. Wakeman and Ebenezer Seely, for one hundred and ninety-nine dollars and twelve cents, and prior to the sale upon the execution under which the defendant claims title, the receiver had been fully paid the amount due on that judgment, for debt, interest, and costs, and the only matter of claim by the receiver was for some unpaid costs of a warrant of commitment. How these latter costs had ever been allowed or become any charge upori the assigned estate, is not shown, and for aught that appears the legal purposes of the assignment had been fully satisfied (Selden v. Vermilya, 3 N. Y., 525). The receiver, however, did execute a reconveyance to the judgment debtor, August 13, 1850, but subsequent to a sale made by the sheriff on execution against the judgment debtor on April'20, 1848, of the lands in dispute, under which this defendant claims title.
*162 Such an action by creditor’s bill, as authorized by the revised statutes (2 Rev. Stat., 174, § 39), is confined to such satisfaction as may be obtained “out of any personal property, money, or things in action belonging to the defendant (the judgment debtor) or held in trust for him, whether the same were originally liable to be taken in execution at law or not.” The institution of such an action did not bring the real estate owned by the debtor and situate within the State within the jurisdiction of the court of chancery, and could at most affect it by a sequestration of costs due or (possibly) those to become due. It did not authorize the court, in such an action, to sequestrate the title to the land and vest it in its receiver, or to confer on him any but the powers of a common-law receiver. It could not supersede the necessity for a sale under execution of the debtor’s interest in the land, nor deprive him of the right of redemption as afforded by statute (Scouton v. Bender, 3 How. Pr., 185 ; Chatauque County Bank v. White, 6 Barb., 599-603, unreversed in this respect in 6 N. Y., 252-255 ; Porter v.Williams, 9 Id., 148).
The act of 1845, chap. 112, enacted that “Any receiver appointed by- virtue of an order or decree, may take and hold any real estate upon such trusts and for such purposes as the court may direct, subject to the further order or direction of the court.” This act does not profess to extend the general jurisdiction of the court upon proceedings instituted as a mere creditor’s bill, that in no way involved its powers in matters of alleged trust.or fraud, nor authorize it to sequester or seize upon the debtor’s title to real estate. It allowed the imposition only of such trusts as were consonant with the jurisdiction already possessed by the court. And as none existed on such a mere creditor’s bill to sell the debtor’s real estate, subject to execution, for the payment of the debt, no such trust could be enforced *163 or directed under the act of 1845. The deed to the receiver of all the debtor’s real estate, subject to the present and future orders of the court, without any such further or other order, or any authority in the court to order a sale of this property, or any order or decree made to that effect, in no respect divested Price, the judgment debtor, of any right or interest in the land. It is only in cases where the title to. lands within the State is assailed by the creditor for fraud or breach of trust, or for the enforcement of a trust, that the action becomes one in r&m, and the title to the real estate becomes involved, that the right attaches, and the court seizes upon it, for the purposes of its ultimate decree, and the title remains in abeyance until the final disposition of the questions raised in respect to it are adjudicated upon and settled by the court.
Second. The statute (2 Rev. Stat., 370, § 46), authorized the redemption of real estate sold under execution. 1st. By the judgment debtor; or, 2nd. (If dead) by his heirs or devisees; or, 3rd. By his grantee, “ who shall have procured an absolute title, by deed, sale under mortgage, or by any other means, to the premises sold, or to any lot, tract, parcel or portion that shall have been separately sold.”
The right of redemption thus afforded the judgment debtor seems to be independent of, and from many considerations to extend beyond, the mere circumstance that he yet remains absolute owner of the land. The statute is distributive, and affords the remedy to each class of persons named. As to the judgment creditor, various good reasons for his redeeming the land, growing out of his interest in the question, may still continue to exist, although he may have parted with all his title in the land ; to wit, from his covenants of warranty and against incumbrances, or from other considerations of interest or morality that may induce him to protect the title of those claiming *164 under him. His independent right, under the statute, to efféct such redemption, appears to be absolute, and. without exception, in terms or in principle, notwithstanding he may have ceased to be the owner of the property sold. From the considerations above stated, the title vested in Batting, the receiver, as his grantee. Was not such “an absolute title,” by deed or otherwise ? (2 Rev. Stat., 370, § 46, subd. 3). As upon any aspect of the case it divested the judgment debtor of any interest in'the land, or of consequent right of redemption, it was defeasible, and only subject to the payment of the judgment debt and costs.
Thirdly. The receipt or certificate of. the sheriff who made the sale, and was by statute authorized to receive the redemption money for the purchaser at the sale under the execution (2 Rev. Stat., 370, § 45), was sufficient evidence, under well-established principles, of such payment, and a complete redemption of the property from the. sale under the execution.
First. The purchaser acquired a mere lien (Vaughn v. Ely, 4 Barb., 159; Hodge v. Gallup, 3 Den., 536) ; and on payment of the amount necessary to make the redemption, the sale and the certificate thereof became null and void (2 Rev. Stat., 371, § 49).
Second. The payment was well established by such receipt of the person authorized to accept the amount necessary to effect the redemption.
Third. The agency of Isaac Adriance in making such payment (both he "and the sheriff who made the sale being dead;, was well established by the cotemporaneous, written memorandum he made in his lifetime, and neither he nor his representatives could contest the fact of his agency. It was, however, otherwise sufficiently proved.
Fourth. The provisions of the act of 1847, ch. 410, amendatory of 2 Rev. Stat., 371, § 51, have reference *165 only to cases in which the judgment debtor, his heirs, devisees or grantees, have failed to make redemption of his lands sold under execution, as allowed by sections 46 to 48, and to such redemptions, acquisitions and transfers of title as may .thereafter and within fifteen months after the sale be acquired by successive judgment creditors or mortgagees, through subsequent redemptions. They have no reference to the absolute redemption to be effected under sections 46 to 49, whereby the property is reinstated, and again subjected to the subsisting liens of other judgments and mortgages than the judgments upon which it had been sold.
This right of redemption is remedial, and is not to be strictly construed. “It is to receive a liberal and .benign construction in favor of those whose estates will otherwise be divested” (Dubois v. Hepburn, 10 Pet. 1; Chapin v. Curtenius, 15 Ill., 427; Masterton v. Beasley, 3 Ohio, 310). An act done by one in the name and for the benefit of an interested principal is to be presumed to have been effected in that interest, and unless repudiated by the person or party for whom it is assumed to be transacted, is to be deemed accepted as such an act of agency for the avowed principal.
It was so claimed in the matter now under consideration, and it does not lie with the adverse party in interest to assert that the assumed agent, whose acts were in no way disclaimed, but were relied upon by those for whom he professed to act, bad no authority (Masterton v. Beasley, supra). Indeed, it would be difficult to hold in any case that the mere intervention of a stranger for the benefit of one entitled to redeem his lands from forfeiture, should (unless expressly repudiated) be held ineffectual for that purpose.
The right of redemption of the land, tor and on behalf of Francis Price, being shown to exist, and its *166 exercise having been duly proved, the defendant fails to establish any foundation for his claim of title, and the judgment against him should be affirmed.
Judgment affirmed.

 Present, Daly, Ch. J., Robinson and Loew, JJ.

 See the case reported in 1 Jones & Spencer, 530.

 Reported in this volume