ELIZABETH C. BENNETT, APPELLANT, v. WASHINGTON GARLOCK, RESPONDENT.

*Trustee takes only sufficient estate to fulfill trusts — Statute of uses — vested equitable estate in remainder — made a legal estate by — Rule in Shelly's Case — Statute of limitations — does not run against remainderman.*

This was an action of ejectment, brought by the plaintiff to recover the undivided one-third of a lot in the town of Frankfort. It appeared upon the trial, that on the 24th day of May, 1808, Martha Codd, wife of Matthew Codd, owned the lot in fee simple, subject to the marital rights of her husband, and was in possession thereof, and that plaintiff, the daughter of the said Martha and Matthew, was then living. That on that day the said Martha and Matthew executed an indenture whereby they conveyed the said premises, with others, to Varrick and Breese, " in trust, for the uses, intents, and purposes " (first) to sell so much as should be necessary to pay debts; (second) to lease, manage, etc., the same, and pay over the net profits of the residue thereof to the said Matthew and Martha for the terms of their natural lives, and (third) to " hold all the residue of said land, and over and above what may be sold as aforsaid for the payment of said debts * * * for the sole use, benefit and behoof of such persons as shall be the right heirs of them, the said Matthew and Martha Codd, at the time of the death of the survivor of them," etc.

Martha Codd survived her husband, and died in 1871, the land being then held by a trustee appointed by the court in place of Varrick and Breese. *Held,*

(1) That the trustee took only such an estate as was necessary to enable him to fulfill the purposes of the trust, and that such estate terminated upon the death of the survivor of the said Matthew and Martha;

(2) That the plaintiff, under the statute of uses, took a legal vested estate in remainder, immediately, upon the execution of the deed;

(3) That the rule in *Shelly's Case* did not apply, the estate of the grantors being equitable and that in the heir a legal estate, and hence plaintiff took by purchase and not by descent.

The deed provided that the grantors might, by a joint will or appointment, direct and appoint the persons to whom the residue of the estate should go, and also authorized the trustee, upon their request, in writing, to sell any portion thereof. *Held,* that as such powers had never been exercised they were of no importance in ascertaining the rights of the parties created by the deed.

The defense interposed in the action was that of an adverse possession commenced in 1842. *Held*, that as the trustee under the deed in no way represented or was bound to protect the interests of the plaintiff, the statute did not commence to run against her until her right of action accrued, upon the death of her mother, in 1871.

APPEAL from a judgment in favor of the defendant, entered upon the trial of this action by the court without a jury.

*Edward C. James*, for the appellant. If, by the trust deed of May 24, 1808, the plaintiff became vested with a future or expectant estate in said lands, whether legal or equitable, then a title by adverse possession against such estate during the continuance of the life estates was impossible, for the law is well settled that no possession can be deemed adverse to a party who has not, at the time, the right of entry and possession. (*Webster* v. *Cooper*, 14 How. [U. S.], 488; *Carver* v. *Jackson d. Astor*, 4 Peters, 1; *Devyr* v. *Schaefer*, 55 N. Y., 446; *Jackson* v. *Schoonmaker*, 4 Johns., 390; *Jackson* v. *Sellick*, 8 id., 262; *Jackson* v. *Johnson*, 5 Cowen, 74; *Jackson* v. *Mancius*, 2 Wend., 357; *Clark* v. *Hughes*, 13 Barb., 147; *Randall* v. *Rabb*, 2 Abb. Pr., 307; *Wells* v. *Prince*, 9 Mass., 508; *Wallingford* v. *Hearl*, 15 id., 471; *Doe d. Carson* v. *Edmonds*, 6 Meeson & Welsby, 295.) A trustee takes that quantity of interest only which the purposes of the trust require, and the instrument creating it permits. The legal estate is in the trustee so long as the execution of the trust requires it, and no longer; and then it vests in the person beneficially entitled. (*Nicoll* v. *Walworth*, 4 Denio, 385, 388; *Webster* v. *Cooper*, 14 How. [U. S.], 488, 499; Perry on Trusts, § 319, 320; 4 Kent Com., 204; 1 R. S., 730, § 67.) The power of sale to pay debts required no estate to be vested in the trustees. It never attached to the land, for the court finds that there is no evidence of any debts, dues or demands against Matthew and Martha Codd, or either of them, subsisting or existing, May 24, 1808. If such debts had then existed, this power, or trust, would cease as soon as they were, in any mode, paid or extinguished. (*Selden* v. *Vermilyea*, 3 N. Y., 525; *Kittell* v. *Osburn*, 4 T. & C., 45; *Heardson* v. *Williamson*, 1 Keen, 34.) Indeed, it would cease as soon as the trustees might, with due diligence, have discharged them, for they cannot

prolong their estate by a neglect of duty. (*Carter* v. *Barnardiston*, 1 P. Wms., 518; Salk., 153.) The deed vested in the trustees a legal estate in said lands commensurate with the purposes of said trust, to wit, an estate *pur autres vies*, or during said two lives. On the expiration of said lives, the purposes of this trust would cease, and the estate of the trustees would then also cease. (2 Jarman on Wills, 213, 214; *Welch* v. *Allen*, 21 Wend., 147; *Blacker* v. *Anscombe*, 4 Bos. & Pul., 25; *Bain* v. *Matteson*, 54 N. Y., 663.) Under the third clause of the trust deed of 1808, the plaintiff, who was living when said deed was executed, became immediately vested with a legal estate in remainder limited by way of use. Remainders, whether vested or contingent, may be limited by way of use, as well as at the common law. (2 Washburn on Real Property, chap. 2, §§ 2-8; 4 Kent's Commentaries [m. p.], 205, 237, etc.; 1 Saunders on Uses, 105, 106; 1 Cruise, title 11, chap. 3, §§ 5, 19, 22 and note 1; 2 id., title 16, chap. 5, §§ 1, 15, 16, 17; Act Concerning Uses, passed Feb. 20, 1787; 1 Greenleaf's Laws, chap. 37, p. 361,; *Reformed Dutch Church* v. *Veeder*, 4 Wend., 494; *Carver* v. *Jackson d. Astor*, 4 Peters, 1, 90.) It had been uniformly held that a grant or devise to trustees and their heirs to receive the rents and profits of lands and pay them to A and B for their lives, and to stand seized of, or hold said lands, for the use and behoof of their children, vested a valid legal estate in remainder in such children. (*Jones* v. *Say & Sele*, 3 Brown's Parl. Cas., 458; *Shapland* v. *Smith*, 1 Brown's Ch. Cas., 75; *Doe d. Hallan* v. *Ironmonger*, 3 East, 533; *Doe d. Terry* v. *Collier*, 11 id., 377; *Silvester* v. *Wilson*, 2 Term R., 444; *Doe d. Willis* v. *Martin*, 4 id., 39; *Foster* v. *Hayes*, 2 El. & Bl., 27; 4 id., 717; Lewin on Trusts, 253, 254; *Carver* v *Jackson d. Astor*, 4 Peters, 1, 90; *Webster* v. *Cooper*, 14 How. [U. S.], 488, 497, 498; *Ward* v. *Amory*, 1 Curtis C. C., 419; *Ware* v. *Richardson*, 3 Md., 505; 2 Am. Law Reg., 485; *Green* v. *Green*, 23 Wallace, 486, 491; *Vanderheyden* v. *Crandall*, 2 Denio, 9; 1 N. Y., 491; *Bellinger* v. *Shafer*, 2 Sandf. Ch., 293.) In this case the plaintiff was born before the trust deed was executed. The three conditions necessary to the execution of this use in remainder under the statute were then complete; and it immediately vested in her in fee, although subject to open and let in after-born children. (4 Kent's

Commentaries, 205; *Doe d. Barnes* v. *Provoost*, 4 Johns., 61; *Nodine* v. *Greenfield*, 7 Paige, 544, 548; *Carver* v. *Jackson d. Astor*, 4 Peters, 1, 90; *Doe d. Poor* v. *Considine*, 6 Wallace, 458, 473; *Right* v. *Creber*, 5 Barn. & Cress., 866; *Doe d. Bills* v. *Hopkinson*, 5 Queen's Bench, 223; *Doe d. Comberback* v. *Perryn*, 3 Term R., 484; *Williamson* v. *Field*, 2 Sandf. Ch., 533; *Moore* v. *Littel*, 41 N. Y., 60; *Provoost* v. *Colyer*, 62 id., 545, 552.) The proviso in the third clause by which the parents reserve the right to appoint by their joint will to whom the remainder shall go; and the provisions of the fourth clause by which the trustees are given a discretionary power of sale to be exercised upon the joint written request of the parents, do not alter the character of the plaintiff's estate as a vested remainder in fee. The only effect of these powers is to render the remainder liable to be defeated by their exercise. But until they are exercised the estate remains vested and undisturbed. (*Doe d. Willis* v. *Martin*, 4 Term R., 39, 63; *Cunningham* v. *Moody*, 1 Vesey, Sr., 174, 177; *Foster* v. *Hayes*, 2 El. & Bl., 27; 4 id., 717; *Carver* v. *Jackson d. Astor*, 4 Peters, 1, 90; *Ward* v. *Amory*, 1 Curtis C. C., 419, 425; 4 Kent's Com., 204.) When lands are given to trustees and their heirs in trust to receive the rents and profits and pay them to A for life, and to stand seized of said lands to the use of the heirs of his body upon A's death, the remainder so granted is a legal estate during the life of A, and does not unite with his equitable estate for life under the rule in *Shelly's Case*. (*Jones* v. *Say & Sele*, 3 Brown's Parl. Cas., 458; *Shapland* v. *Smith*, 1 Brown's Ch. Cas., 75; *Doe d. Hallan* v. *Ironmongers*, 3 East, 533; *Doe d. Terry* v. *Collier*, 11 id., 377; *Goodlittle d. Hayward* v. *Whitby*, 1 Burrows, 228; *Blaker* v. *Anscombe*, 4 Bos. & Pul., 25; *Warter* v. *Hutchinson*, 5 Moore, 143; 1 B. & C., 721; *Carver* v. *Jackson d. Astor*, 4 Peters 1; *Ward* v. *Amory*, 1 Curtis C. C., 419, 427; *Ware* v. *Richardson*, 3 Md., 555; 2 Am. Law Reg., 485; *Green* v. *Green*, 23 Wallace, 486, 491.) When lands are given to trustees and their heirs to receive the rents and profits and pay them to A for life, and upon his death the lands are to go to the heirs of his body, the remainder is a legal estate during the life of A, and does not unite with his equitable interest for life, under the rule in *Shelly's Case*. (*Silvester* v. *Wilson*, 2 Term R., 444; *Collier* v. *McBean*, 34 Beavan, 426;

*Mogg* v. *Mogg*, 1 Merivale, 654, 678, 689 ; *Playford* v. *Hoare*, 3 Young & Jervis, 175 ; *Doe d. Muller* v. *Claridge*, 6 M., G. & S., 641 ; *Thurston* v. *Thurston*, 6 Rhode Island, 296.) When lands are given to trustees and their heirs to permit A to receive the rents and profits for life, and to hold in trust for the heirs of A during his life, the remainder is a legal estate during the life of A, and does not unite with his equitable interest under the rule in *Shelly's Case*. (*Biscoe* v. *Perkins*, 1 Vesey & Beames, 485 ; *Vanderheyden* v. *Crandall*, 2 Denio, 9, 17 ; *Webster* v. *Cooper*, 14 How. [U. S.], 499.) When lands are given to trustees and their heirs to hold to the use of A for life, and after his death to the use of the heirs of his body, the remainder is a legal estate during the life of A, and hence unites with A's legal estate under the rule in *Shelly's Case*, unless the word heirs is used as a *descriptio personarum*. (*Curtis* v. *Price*, 12 Vesey, 89 ; *Doe d. Willis* v. *Martin*, 4 Term R., 39 ; *Doe d. Turner* v. *Dorvell*, 5 id., 518 ; *Doe d. Littledale* v. *Sneddle*, 2 Barn. & Ald., 126 ; *Owen* v. *Smith*, 2 H. Blackstone, 594 ; *Foster* v. *Hayes*, 2 El. & Bl., 27 ; 4 id., 717 ; *Marshall* v. *Hill*, 2 Maule & Selwyn, 608.) When lands are given to trustees and their heirs to receive the rents and profits and pay them to A for life, or to permit A to receive them, or in trust to hold to the use of A for life, and upon his death to convey to his heirs, children or appointees, then the remainder is an equitable estate during the life of A, and the remainder-man can only acquire the legal estate through the conveyance. (*Mott* v. *Buton*, 7 Vesey, 201 ; *Phipps* v. *Ackers*, 9 Cl. & Fin., 583 ; 4 M. & G., 1107 ; *Doe d. Booth* v. *Edlin*, 4 Ad. & El., 582, 591 ; *Clarke* v. *Davenport*, 1 Bosw., 95, 114, 115 ; *Williamson* v. *Field*, 2 Sandf. Ch., 533 ; *Pitcher* v. *Carter*, 4 id., 1 ; *Wood* v. *Mather*, 38 Barb., 473 ; 44 N. Y., 249.)

*S. Earl*, for the respondent. The deed in trust to Breese and Varrick in 1808 vested in them, and their heirs and assigns, the legal estate and the whole thereof in respect to the lands therein mentioned. (*Bradstreet* v. *Clark*, 12 Wend., 659 ; *Belmont* v. *O'Brien*, 12 N. Y., 394 ; *Bain* v. *Matteson*, 54 id., 666 ; *Anderson* v. *Mather*, 44 id., 249.) In this case the *cestui que trust*, Mrs. Bradstreet, had no particular estate. The heirs of the grantors creating the trust, had no remainder. The trustees were vested with the legal title and clothed

with all its incidents, subject only to the execution of the trusts. If under this deed the plaintiff had any right, she could have compelled the trustees to protect it, and failing to do so, they would be legally responsible in damages. (2 Perry on Trusts, § 816; 2 Story Eq. Jur., § 1389.)

TALCOTT, J.:

This is an appeal from a judgment rendered at the Circuit Court in Herkimer county, after a trial by the court without a jury. The action is ejectment, to recover an undivided third part of great lot No. 79 in Cosby's manor, in the town of Frankfort, Herkimer county, and was commenced on the 21st day of October, 1874.

The case commences with the statement that the plaintiff proved that Martha Codd, wife of Matthew Codd, was, on the 24th day of May, 1808, the owner in fee simple of the premises described in the complaint, subject to the marital rights of her husband, and that she and her husband were in possession thereof.

The plaintiff is the daughter of the said Matthew and Martha Codd, and was born before the said 24th of May, 1808. This, of course, established a *prima facie* title in the plaintiff, and entitled her to recover; but the plaintiff, anticipating a defense of title by alienation of the ancestor, or by adverse possession, went farther and showed that on the 24th of May, in the year 1808, the said Matthew Codd of the first part, and said Martha Codd, his wife, of the second part, and Samuel S. Breese and Abraham Varrick of the third part, made and executed an indenture of that date, whereby the parties of the first and second part (Matthew and Martha Codd), for "and in consideration of one dollar to them in hand paid, and in order to effect the uses and purposes hereinafter mentioned," did grant, release and convey unto the parties of the third part, their heirs and assigns, "all the lands, tenements, hereditaments and real estate whatsoever or wheresoever, whereof they the parties of the first and second part were, or whereof either of them was seized or entitled to, either in law or in equity, with all and singular the rights, interests, property and estate which the parties of the first and second part were, or either of them was, then seized or entitled, either in law or in equity, to have and to hold, unto the said parties of the third part, and their heirs and assigns, as joint tenants, and

not as tenants in common, in trust, for the uses, interests and purposes thereinafter set forth."

These uses were, in brief: First, to sell and dispose of so much of the said lands, tenements, etc., as shall be sufficient to pay and discharge all debts, etc., then subsisting against the parties of the first and second parts, or either of them. Secondly, in trust as to the residue of said lands and tenements, to lease, manage, cultivate and improve the same in such manner and upon such terms and conditions as to said trustees, or the survivor of them, or their heirs and assigns, or of the survivor, shall from time to time deem proper, and most for the interest and benefit of the parties of the first and second part, or the survivor of them, the net profits and avails whereof are to be paid and accounted for to the said Matthew Codd during his lifetime, quarterly, or as often as may be reasonably required by him for the support and maintenance of said Matthew and Martha Codd and their children; and if said Martha Codd shall survive her said husband, then the said net profits or avails are to be paid and accounted for to her quarterly, or as often as may reasonably be required by her, during her natural life, for the maintenance of herself and said children. Thirdly, in trust and upon this express intent that said trustees, and the survivor of them, and the heirs and assigns of such survivor, shall hold all the residue of said lands, etc., over and above what may be sold as aforesaid for the payment of said debts as aforesaid, for the sole use, benefit and behoof of such persons as shall be the right heirs of them, the said Matthew and Martha Codd, at the time of the death of the survivor of them; that is, to their children or grandchildren, or such other person as by the laws of the State of New York would be heir or heirs of the said Matthew and Martha Codd at the time of the death of the survivor of them, if this deed had not been made. Provided, however, and it is expressly intended, that in order to secure the respect and obedience of their children and grandchildren, or other representatives, the said Matthew Codd and Martha Codd may, if they can agree and deem it proper, by their joint will or appointment, in due form of law to be executed, direct and appoint the persons to whom and for whose use the said trust estate of the said residue of said lands shall go, upon the decease of the survivor of said Matthew and Martha Codd, which will or appointment so jointly

executed as aforesaid may be revoked or annulled by a proper instrument in writing, by either of said Matthew or Martha Codd, at his or her pleasure, and in case of such revocation the said estate shall go to their right heirs aforesaid.

By the fourth clause of said deed, it was provided that if at any time the said Matthew and Martha Codd should, by instrument in writing, request the trustees to sell and convey any portion of said lands over and above what might be necessary for the payment of said debts, the said trustees were authorized to comply with said request, but a compliance with such request was to be discretionary, and not obligatory, upon the trustees.

The deed was executed in presence of Jonas Platt and Abram M. Walton. An explanatory instrument was afterwards, and on the 24th of May, 1808, executed by Matthew and Martha Codd, by which it was declared that the true intent and meaning of the principal deed was that the trustees, the survivor, or the heirs and assigns should not be accountable for, or obliged to pay over, the net profits or avails of the estate, until the same should be actually received by the trustees, the survivor or his heirs and assigns.

The deed was acknowledged on the 28th day of June, 1808, and was recorded in the Oneida county clerk's office, on the 30th day of June, 1808. On the 6th day of July, 1814, Breese and Varrick, in pursuance of a decree in the Court of Chancery, conveyed to Thomas Addis Emmett, his heirs and assigns, as sole trustee, upon the same trusts under which the lands were held by them. Emmett accepted the trust. Thomas Addis Emmett died in the year 1827, but no trustee was appointed to succeed him until March, 1855, when Thomas Cunningham was, under the authority of a judgment of the Supreme Court, rendered December 22, 1854, in an action wherein Martha Bradstreet, formerly Martha Codd, was plaintiff, and the heirs of Thomas Addis Emmett were defendant, appointed such trustee, and the heirs of Emmett conveyed to him upon the same trusts. The deed to Cunningham contained a full recital of the previous trust deeds and the proceedings of the court in reference to the continuance and transfer of the said trust estate. It was recorded in Herkimer county, April 23, 1855, but the original trust deed to Breese and Varrick was not otherwise recorded in Herkimer county. By a decree of the Court of Chancery, on the 16th day of June, 1817, in

a suit in which Martha Codd was plaintiff and Matthew Codd defendant, the marriage contract between the parties was dissolved, and each party freed from the obligations thereof, and the care and control of their children was awarded to said Martha, and the said Matthew was directed to deliver over to her all deeds, leases or papers, which related to any lands which belonged to her at the marriage, or which had descended to or devolved upon her, or been acquired for her use, since that time. By an act of the legislature, soon afterwards passed, the said Martha and her children were authorized to and did assume the surname of Bradstreet (which had been her maiden name), by which name they have since been called.

Soon after said divorce, Matthew Codd absented himself and has not since been heard from, and it was admitted that he died before the said Martha. Said Martha Bradstreet, formerly Martha Codd, died in Chenango county, New York, December 16, 1871, aged ninety-three years, and at her death the heirs of said Martha Bradstreet and Matthew Codd, were as follows: Elizabeth C. Bennett, the plaintiff in this suit, Edward L. Bradstreet and four grandchildren, the children of a deceased daughter, Sarah Sterling. No joint will or appointment was ever made by said Martha and Matthew, and none of the property has been conveyed by any of the trustees, and no conveyance has been executed by said Cunningham, the last trustee, to the said heirs or any of them. The defense to the action was adverse possession for more than twenty years, by the defendant and those under whom he claims. The defense was sustained by the justice before whom the action was tried, upon the ground that the trustees under the deed of 1808 took the entire fee, and that the interest conveyed to the plaintiff by that deed was only an equitable interest until the death of Martha Bradstreet, and being a mere equitable interest, the title of the plaintiff was represented by the trustee and barred by a disseizin or adverse possession, which ran against the trustee as such.

In view of the ground upon which the defense was sustained, it becomes important to inquire what sort of an estate the plaintiff took under the deed of 1808. By that deed an active and valid trust was created. First, for the payment of the debts of the grantors. Second, to lease, manage, cultivate and improve the estate for the benefit of the grantors, and the survivors of them,

paying over the net profits to said Matthew during his life for the support of said Matthew and Martha and their children; and if said Martha should survive Matthew, then to account to her during her natural life for the net profits. These were active trusts, valid at the time of their creation, and the deed conveyed to the trustees the legal estate, to have and to hold during the lives of Matthew and Martha Codd, and the life of the survivor, and so much longer as should be necessary for the discharge of the debts. (See the case of *Bain* v. *Mattison*, partially reported, 54 N. Y., 663, in which this deed came under examination.) The power of discretionary sale at the request of the grantors, and the power of appointment by joint will reserved to the grantors never having been exercised, are of no importance in ascertaining the interests of the parties. If exercised they might defeat subsequent estates, but until exercised they have no effect. (*Doe dem. of Willis* v. *Martin*, 4 Term R., 39–63; *Carver* v. *Jackson dem. of Astor*, 4 Pet., 1–90.) After the two active trusts before mentioned, the deed proceeds to provide that the trustees, and the survivor of them, and his heirs and assigns, shall hold all the residue of said lands "for the sole use, benefit and behoof of such persons as shall be the right heirs of them, the said Matthew and Martha Codd, at the time of the death of the survivor of them, the said Matthew and Martha Codd; that is, to their children or grandchildren, or such other person as by the laws of the State of New York" would be their heirs if the deed had not been made. This remnant of the property not disposed of under or by virtue of any of the preceding powers or trusts is a remainder. A remainder is defined by KENT to be "a remnant of an estate in land, depending on a particular prior estate, created at the same time and by the same instrument, and limited to arise immediately on the determination of that estate, and not in abridgment of it." The word remainder is not a term of art necessary to be used in the creation of a remainder. (1 Greenlf. Cruise, 277; 2 Wash. on Real Prop., 547 [4th ed.].) The remnant of the estate which might remain was, then, a remainder conveyed under the name of "residue," and was to take effect after and as soon as the active trusts mentioned in the deed were satisfied. The act concerning uses, in force at the time when the deed was executed, was the act of February 20, 1787 (1 Greenlf. Laws, 1787, ch. 37, p. 361), and is, in substance, the same

as the English statute of uses. (27 Hen. VIII, ch. 10.) It provides, amongst other things, "that when any person should be seized of any estate in remainder, to the use of or in trust for another, the *cestui que use* should thenceforth stand and be seized, deemed and adjudged in lawful seizin and estate of such remainder, and that the estate, right and title of the trustee should from thenceforth be deemed and adjudged to be in the *cestui que use*, after such quality, manner, form and conditions as said *cestui que use* before had in the use. The effect of this statute was, as was held both in law and equity, in all cases of a mere "naked use" or "passive trust," to transfer the legal title forthwith from the trustee to the *cestui que use*, by a process called "executing the use," whereby so much of the legal title as appertained to the use in question was said to be immediately, and by the same conveyance drawn out of the trustee and vested in the beneficial owner. By the Revised Statutes of 1830 (vol. 1, p. 727), it is declared (§ 46 of the Statute of Uses and Trusts) that every estate which is now held as an use, executed under any former statute of this State, is confirmed as a legal estate. But by section 48 of the statute, the estate of the trustees in any existing trust, "where the title of such trustees is not merely nominal, but is connected with some power of actual disposition or management in relation to the lands which are the subject of the trust," was saved from the general abolition of trusts; and by section 45 it was provided that every estate and interest in lands, except as authorized and modified in that article, should be deemed a legal right. The remainder to the heirs of Matthew and Martha Codd was not connected with any management or control of the lands, or any disposition thereof, by the trustees after the death of the survivor of the grantors. The trustees were not required or empowered to convey the remainder to the heirs of the grantors, nor were they to preserve contingent remainders, and no act authorized or required to be done by the trustees, after the active trusts mentioned in the deed were satisfied, can be suggested.

The remainder was either vested or contingent. An estate is vested when there is an immediate right of personal enjoyment, or a present fixed right of future enjoyment. (4 Kent, 202.)

Kent says: "The definition of a vested remainder appears to be accurately and fully expressed in the New York Revised Statutes,

and is as follows : when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate."

Where a remainder is so limited as to take effect in possession, if ever, upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainderman is *in esse* and ascertained, provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession. If the estate is limited over to another, in the event of the death of the first remainderman, before the determination of the particular estate, his vested interest will be subject to be divested by that event. (*Moore* v. *Lyons*, 25 Wend., 119 ; Chancellor's Op., 144.)

The plaintiff was *in esse* at the time the deed of 1808 was executed. She then would have had an immediate right to the possession of the lands upon the ceasing of the precedent estate. True, the right might have been divested by the death of the plaintiff without issue, before the decease of her mother, and so the remainder would never have actually taken effect in possession, but it is the present capacity of taking effect in possession if the possession were to become vacant, which distinguishes a vested from a contingent remainder. (See *Lawrence* v. *Bayard*, 7 Paige, 70 ; *Moore* v. *Littel*, 41 N. Y., 66 ; *Sheridan* v. *House*, 4 Keyes, 569 ; *Chism* v. *Keith*, 1 Hun, 589 ; *Howell* v. *Mills*, 56 N. Y., 226 ; *Embury* v. *Sheldon's. Exrs. et al.*, MSS., Court of Appeals, N. Y. Weekly Digest, March 12, 1877.) The plaintiff then took a vested remainder under the deed of 1808. It was a mere " naked use " or " passive trust " and, by virtue of the statute of uses of 1787, was executed by conferring a legal estate upon her *eo instanti* when the remainder was created. But what was the estate of the trustees under the deed? It was well settled before the Revised Statutes of 1830 that the trustee takes that amount of interest only, both as to duration and amount, which the purposes of the trust require, and the instrument creating the trust permits, and whether the conveyance to the trustee be with or without words of inheritance, he takes an estate sufficient for the execution of the trust — neither more nor less. (4 Kent, 204 ; Perry on Trusts, 319, 320 ; *Nicoll* v. *Walworth*,

4 Denio, 385.)    It is also enacted by the statute of uses and trusts of 1830, section 67.   When the purposes for which an express trust shall have been created shall have ceased, the estate of the trustees shall also cease.    This statute applies to trusts created before the Revised Statutes took effect. (*Bellinger* v. *Shafer*, 2 Sandf. Ch. [m. p.,], 293 ; *Eckford* v. *DeKay*, 8 Paige, 89–94; S. C., on appeal, 26 Wend. 29.) The trustees therefore took no estate under the deed to endure longer than until the purposes for which the express trusts were created ceased.

There was no evidence that any debts existed against the said Matthew and Martha Codd, or either of them, at the time of the execution of the deed of 1808, and there is no proof that any of the trustees have attempted to dispose of any of the lands embraced in the trust, for the payment of debts or otherwise.    It is suggested, and perhaps is probable, that the insertion of the power of sale for the payment of debts, was a matter of form, to relieve the trans-action from any suspicion of an intent to hinder, delay, or defraud creditors.    Perhaps it was inserted as a matter of precaution, to pro-tect the deed against the allegation of a fraudulent intent, in case any debt or debts of the grantors, or either of them, not then remembered or recognized, should afterwards be made to appear. However this may be, if in fact any such debts existed at the date of the deed, the trust, so far as it was upheld by the power of sale for the payment of debts, would cease when they were in any manner paid or extinguished. (*Selden* v. *Vermilya*, 3 N. Y., 525.)

The deed appears to have been an open transaction, put upon the public records in the county where the grantors resided soon after its execution, and it does not appear that any creditor has made any claim for a debt due at that time, or claimed to be in any manner interested in the trust, or its execution; and we agree with the learned justice before whom the cause was tried, that any debts that may have existed against the grantors, or either of them, in the year 1808, must, from the lapse of time and the absence of proof, be presumed to have been extinguished prior to 1871, when Martha Bradstreet died.

The trust for Martha and Matthew Codd, could, by its terms, endure only for their lives and the life of the survivor, and it was provided, therefore, by the deed, that when the debts, if any, were

extinguished, and the survivor of said Matthew and Martha should die, the estate of the trustees should cease.

Leaving out of view, then, the trust, if it were a trust for the payment of debts, the trustees took an estate *pour autres vies*, viz., for the lives of Martha and Matthew Codd, and the survivor of. them. The plaintiff took a vested remainder in fee, subject to being defeated by her death without issue, before. the termination of the life estate. The remainder was executed by the statute of uses, and was by virtue of that statute a legal estate.

The adverse possession commenced in the year 1842. The estate of the plaintiff did not coalesce with the estate of her parents, under the rule in *Shelly's Case*, if for no other reason, because the estate . of the plaintiff was a legal estate, and that of her ancestor was merely equitable. Matthew and Martha Codd were *cestuis que trust* under the deed, and during and for their lives and the life of the survivor, the legal title to the estate was vested in the trustees. In - order that the rule in *Shelly's Case* should apply, so that the heir in remainder is held to take by descent and not by purchase, the life estate and the remainder must both be of the same character; that is, both legal or both equitable estates. If one be legal and the other equitable, they do not unite in the ancestor, and the heir, as remainderman, takes by purchase and not by descent. (2 Wash. on Real Prop., 600 [4th ed.]; 1 Perry on Trusts, § 358.)

The adverse possession, then, to be available as a defense, must be good as against the plaintiff who took, as a remainderman, by purchase and not by descent, a vested legal estate. But the plaintiff was not entitled to the possession of the estate until the expiration of the precedent estate for life. The statute did not commence to run against her, at common law, until the right of entry accrued. The trustees of the precedent life estate owed no duty as such to her, and in no way represented her. See *Carver* v. *Jackson ex dem. Astor* (4 Peters, 1), where it was held that an adverse possession of fifty years was unavailing against the title of a remainderman, whose right of entry accrued within twenty years. The case also involves other questions quite similar to those presented in the case at bar. See, also, *Jackson* v. *Schoonmaker* (4 Johns., 402).

The Revised Statutes also declare this principle in clear and comprehensive language, as follows: " No expectant estate can be

defeated or barred by alienation or other act of the owner of the intermediate or precedent estate, nor by any destruction of such precedent estate by disseizin, forfeiture, surrender, merger or otherwise." (1 R. S., 725, § 32.) The adverse possession is claimed to have commenced in 1842, and was limited in its operation and effect by this provision of the Revised Statutes. The disseizin, therefore, could not commence to operate as a bar to the plaintiff so long as her estate was in expectancy instead of actual possession. It was in expectancy until the death of her mother, Martha Bradstreet, in the year 1871.

The learned judge at the Circuit held that neither the defendant nor those under whom he claims, acquired the legal title by virtue of any of those conveyances which are set up as the foundation of the adverse possession, and no point is made to the contrary by the counsel for the defendant on this appeal, so that it is unnecessary to examine any question save that of the adverse possession. Without, therefore, holding that the expectant estate of the plaintiff, if of an equitable character, would, since the Revised Statutes, have been barred by the adverse possession, which was proved in this case, we are of opinion that the learned judge, before whom the cause was tried, was in error in holding that the estate of the trustees was, by the deed, to endure beyond the lives of the grantors, and that the right of the plaintiff was merely that of a *cestui que trust*. We think she took a vested remainder in fee, executed by the statute of uses, under the deed of 1808, and such remainder was protected from destruction by any laches on the part of the trustees, or *cestuis que trust* for life, until her right of entry accrued in 1871, on the decease of her mother, Martha Bradstreet, the survivor of the *cestuis que trust* for life. If these views are correct, the plaintiff should have recovered.

Judgment reversed and a new trial ordered, costs to abide the event.

SMITH, J., concurs. MULLIN, P. J., not having heard the argument, does not vote.

Judgment reversed and new trial ordered, costs to abide the event.